**In re William C. HERRELL, Debtor.**

**Bankruptcy No. 95–07418.**

United States Bankruptcy Court,
N.D. Florida,
Tallahassee Division.

June 16, 1997.

Albert Penson, Tallahassee, FL, for debtor.

Mark Freund, Tallahassee, FL, Chapter 7 Trustee.

## *MEMORANDUM OPINION*

LEWIS M. KILLIAN, Jr., Bankruptcy Judge.

This matter came on for hearing on the Chapter 7 Trustee's Objection to Debtor's Claim of Exempt Property and the motion of the Personal Representative of the debtor's probate estate to determine exempt property. The trustee objects to the debtor's claim of exemption in a life insurance policy and in personal property exceeding $1,000 in value. For the reasons set forth herein, the trustee's objection to the debtor's claim of exemption in personal property exceeding $1,000 is sustained, and the trustee's objection to the debtor's claim of exemption in the insurance policy is overruled.

### Findings of Fact

The debtor purchased a life insurance policy, insuring his life, from Kentucky Central Life Insurance Company (KCLIC) on September 23, 1992. The policy had a face value of $25,000, and required an annual premium of $590.04, payable in monthly installments of $49.17. He did not name a beneficiary and he retained the power to name or change the beneficiary at any time by filing written notice with KCLIC.

The debtor was employed and earned a substantial income in the years prior to filing bankruptcy. He earned $301,085 in 1992, $210,876 in 1993, $294.735 in 1994, and $174,-399 through November 3, 1995, the date the debtor filed his bankruptcy petition. However, the debtor was not current on his income tax payments. The Internal Revenue service assessed the debtor $71,557 for Form 1040 taxes in May, 1992, and $72,017 for Form 1040 taxes in May, 1993. The IRS recorded tax liens in April and September, 1993, respectively.

The debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code on November 3, 1995. He claimed the insurance policy and approximately $4,000 of personal property as exempt property on Schedule C. The insurance policy had no cash surrender value at the time the of the petition. The Chapter 7 trustee, Mark Freund, filed an objection to the debtor's claim of exemption in the life insurance policy and personal property exceeding $1,000 on December 27, 1995. The debtor died on March 31, 1996. Since the debtor had not named a beneficiary of the insurance policy, the death benefit of the insurance policy was paid to the debtor's probate estate. The Personal Representative of the debtor's probate estate filed a motion to determine who is entitled to receive the $25,000 death benefit since the trustee's objection to the debtor's claim of exemption had not been resolved.

### Conclusions of Law

The trustee objected to the debtor's claim of exemption in approximately $4,000 of personal property on the ground that the Florida Constitution only allows a debtor to exempt $1,000 of personal property. F.L. Const. art. X, § 4(a)(2). The debtor's Personal Representative conceded this point at the hearing. Accordingly, the trustee's objection to the debtor's claim of exemption in personal property in excess of $ 1,000 is sustained.

The trustee offers three independent theories as to why his objection to the debtor's claim of exemption in the life insurance policy should be sustained: 1) Fla. Stat. § 222.14 (1995) allows an owner of a life insurance policy, insuring the life of the owner, to exempt only the cash surrender value of the policy; 2) the debtor obtained the insurance policy for the purpose of hindering, delaying, or defrauding the Internal Revenue Service

(IRS); and 3) the trustee is entitled to assert the IRS' right to levy on the insurance policy, to the extent of the debt owing to the IRS.

 Regarding his first theory, the trustee argues that the life insurance policy is property of the debtor's bankruptcy estate and that the debtor was entitled to exempt only the cash surrender value of the policy. The trustee further argues that, as owner of the policy, he would be entitled to name himself, as trustee of the bankruptcy estate, as the beneficiary of the life insurance policy and to claim the proceeds for the benefit of the creditors of the debtor's bankruptcy estate. The trustee refers to Section 541 of the Bankruptcy Code[1] and a case substantially different from the present case to support his position. 11 U.S.C. § 541 (1994); *In re Monahan,* 171 B.R. 710 (Bankr.D.N.H.1994).

Section 541(a)(1) provides that a debtor's bankruptcy estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." Section 541(b)(1) provides, however, that "[p]roperty of the estate does not include any power that the debtor may exercise solely for the benefit of an entity other than the debtor." The issue to be determined is whether the life insurance policy, which retains in the debtor the power to name a beneficiary, is property of the debtor's bankruptcy estate under Section 541(a)(1), or whether the power to name a beneficiary is a power that may be exercised solely for the benefit of an entity other than the debtor, thus excluding the life insurance policy from the debtor's bankruptcy estate pursuant to Section 541(b)(1).

Extensive research has turned up a dearth of bankruptcy Code case law dealing with this issue. However, several courts have squarely addressed this issue under the Bankruptcy Act of 1898,[2] and thus, this is where the analysis will begin. An oft-cited bankruptcy treatise has taken the same approach. When discussing whether life insurance policies constitute property of the estate under Section 541(a)(1), or whether they are excluded from the estate because the power to name a beneficiary is a power that a debtor may exercise solely for the benefit of another entity, the treatise states:

Under the Act, life insurance policies which gave the insured the absolute right to change the beneficiary and to surrender the policies and collect the surrender value, passed to the trustee of the bankrupt insured as assets of the estate **to the extent of the surrender value,** providing the policies were not wholly exempt under state law. This was upheld on the basis of Section 70a(3), usually in conjunction with Section 70a(5). It was pointed out that the insured's power to change the beneficiary, reserved in the policy, "might have been exercised for his own benefit" and was therefore within Section 70a(3). Thus, a policy having a cash surrender value, which if not payable to the bankrupt could be made so payable to him at will by a simple declaration changing the beneficiary, was regarded as an asset to which the trustee was entitled. The fact that this privilege or power was deemed personal to the insured was declared immaterial with respect to such policies in view of Section 70a(3). **The same reasoning should apply under Section 541(b)(1) of the Code** . . . (emphasis added).

5 Collier on Bankruptcy ¶ 541.19 (15th ed.1996)

Section 70a of the Bankruptcy Act of 1898 provides that the trustee of a bankrupt is vested with title to all property of the bankrupt which is not exempt, including all

"(3) powers which he might have exercised for his own benefit, but not those which he might have exercised solely for some other person, . . . (5) property which, prior to the filing of the petition, he could by any means have transferred or which might have been levied upon and sold under judicial process against him: Provided, That when any bankrupt shall have any insurance policy which has a cash surrender value payable to himself, his estate, or

---

**1.** 11 U.S.C. §§ 101–1330 (1994). For administrative convenience, all references to the Code will be by section and number.

**2.** Pub.L. No. 95–598 (1978).

personal representatives, he may, within thirty days after the cash surrender value has been ascertained and stated to the trustee by the company issuing the same, pay or secure to the trustee the sum so ascertained and stated, and continue to hold own, and carry such policy free from the claims of creditors participating in the distribution of his estate under the bankruptcy proceedings, otherwise the policy shall pass to the trustee as assets: . . .". *Cohen v. Samuels,* 245 U.S. 50, 52, 38 S.Ct. 36, 37, 62 L.Ed. 143 (1917) (quoting Section 70a of the bankruptcy Act of 1898). In considering whether life insurance policies constitute property of the estate under Section 70a, the Supreme Court has repeatedly drawn, a distinction between death benefits and cash surrender value, finding that the cash surrender value is property of estate while the other benefits of life insurance, including the death benefit, are not. *Id.* (holding that the cash surrender value of a life insurance policy is to pass to a trustee, and the other benefits of the policy are left to the debtor); *Everett v. Judson,* 228 U.S. 474, 479, 33 S.Ct. 568, 569–70, 57 L.Ed. 927 (1913) (holding that the interest of the trustee in life insurance policies extends only to their cash surrender value and that the date of determining the cash surrender value is the date of filing the petition); *Burlingham v. Crouse,* 228 U.S. 459, 473, 33 S.Ct. 564, 568, 57 L.Ed. 920 (1913) ("As we have construed the statute, its purpose was to vest the surrender value in the trustee for the benefit of the creditors, and not otherwise to limit the bankrupt in dealing with his policy"); *see also United States v. Bess,* 357 U.S. 51, 56, 78 S.Ct. 1054, 1057–58, 2 L.Ed.2d 1135 (1957) (citing *Everett v. Judson,* 228 U.S. 474, 33 S.Ct. 568, 57 L.Ed. 927, for the proposition that "the cash surrender value of a policy on the life of a bankrupt is the extent of the property which is vested in the trustee under § 70a of the Bankruptcy Act").

The facts in *Everett* closely resemble the facts of the present case. In *Everett,* an involuntary bankruptcy petition was filed against the debtor and his firm. *Everett,* 228 U.S. at 477, 33 S.Ct. at 569. The debtor owned life insurance policies payable to his executors, administrators, or assigns. *Id.*

When the petition was filed, the policies had cash surrender values. *Id.* The debtor committed suicide while his bankruptcy case was still pending. *Id.* The executor of the debtor's estate asserted title to the difference between the proceeds of the policies and their cash surrender values. *Id.* The trustee refused to accept the cash surrender value from the executor and refused to turn over the proceeds. *Id.* The Supreme Court held that the interest of the trustee in the insurance policies was limited to their cash surrender value, and that the cash surrender value is determined at the time the bankruptcy petition is filed. *Id.* at 478, 33 S.Ct. at 569.

The Supreme Court has stated that when Congress adopts a new law, it can usually be presumed to have had knowledge of the interpretation given to the previous law. *Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 211, 108 S.Ct. 963, 971, 99 L.Ed.2d 169 (1988). Regarding the adoption of the Bankruptcy Code, the Supreme Court has stated that "in an appropriate case, a court must determine whether Congress has expressed an intent to change the interpretation of a judicially created concept in enacting the Code." *U.S. v. Ron Pair Enterprises,* 489 U.S. 235, 245, 109 S.Ct. 1026, 1032–33, 103 L.Ed.2d 290 (1989). Section 541(b)(1) of the Code and Section 70a(3) of the Act are nearly identical. Section 70a(3) provides that property of the estate does include "powers which he might have exercised for his own benefit, but not those which he might have exercised solely for some other *person,*" whereas Section 541(b)(1) provides that "[p]roperty of the estate does not include any power that the debtor may exercise solely for the benefit of an *entity* other than the debtor." Pub.L.No. 95–598 § 70a(3); 11 U.S.C. 541(b)(1) (emphasis added). It is noted that the proviso referencing life insurance policies in Section 70a(5) of the Act was not included in the Code. However, the issue of whether life insurance policies constitute property of the estate had already been decided by the Supreme Court on several occasions. and thus, inclusion of the proviso in the Bankruptcy Code was unnecessary. Further, this Court has not found anything in the legislative his-

tory of the Code to indicate that Congress sought to change the results in the cases discussed above when enacting the Code. *See* H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 3 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 2 (1978); Report of the Commission on the Bankruptcy Laws of the United States, H.R. Doc. No. 93–137, 93d Cong., 1st Sess. (1973).

Given that this issue has been well decided by the Supreme Court under the Act, there is no indication in the legislative history of the Code that Congress intended to change the interpretation of these Act cases, and the absence of Code cases squarely addressing the issue, I find that the bankruptcy estate would have an interest in the life insurance policy only to the extent of the policy's cash surrender value, which is determined at the date the bankruptcy petition is filed. That interest, however, would have been subject to the exemption provided in § 222.14, Fla. Stat. (1995).

■ The trustee's next argument is that the debtor's purchase of the insurance policy was a fraudulent conversion. The trustee alleges that the debtor was insolvent at the time he purchased the insurance policy, on September 23, 1992, due to the fact that the IRS had assessed $72,017 against him in May of 1992. Thus, the trustee argues, the debtor purchased the insurance policy with the intent to hinder, delay, and defraud the IRS. The trustee argues that these facts constitute a fraudulent asset conversion pursuant to Fla. Stat. § 222.30, and thus, the insurance policy may not be claimed as exempt.

■ It is true that the IRS had assessed $71,557 against the debtor prior to the debtor purchasing the insurance policy. However, the debtor's income in 1992 was $301,085. There was no attempt by the trustee to show what the debtor's assets and liabilities were at the time the policy was purchased, and thus, there was no showing of insolvency. Further, the monthly premiums required under the policy were minuscule. They constituted less than two-tenths of one percent of the debtor's average monthly income at the time the policy was purchased. Finally, there was no attempt by the debtor to transfer assets out of the reach of his creditors.

The death benefit is, and has been since the policy was purchased, payable to the debtor's probate estate, where the proceeds may be used to pay creditors. How the trustee can look at these facts and conclude that the debtor purchased the insurance policy with the intent to hinder, delay, and defraud his creditors is beyond me. However, even if the Court were to close its eyes to the facts of this case and assume the existence of fraud, the only amounts which would have been fraudulently converted are the monthly premiums, not the $25,000 the trustee now seeks to recover. In addition to flying in the face of reason, the trustee's argument must fail for two reasons: 1) having just concluded that a trustee's interest in a life insurance policy extends only to the cash surrender value, which is not present in this case, there is nothing left for the trustee to object to, and 2) Fla. Stat. § 222.30 applies only to transactions occurring on or after October 1, 1993. 1993 Fla. Laws ch. 93–256.

■ The trustee's final argument is that due to its assessments against the debtor, the IRS was entitled to levy upon any of the debtor's property which is not exempted from levy pursuant to 26 U.S.C. § 6334 (1995). Life insurance is not listed in Section 6334. The trustee further argues that he may step into the shoes of the IRS and assert, to the extent of the debt owing to the IRS, the IRS' right to levy upon the insurance policy. There is one fundamental flaw with this argument. The Supreme Court has ruled that while an individual does have a property right subject to levy in the cash surrender value of an insurance policy, an individual does not have a property right to which a federal tax lien may attach in the death benefit of a life insurance policy. *U.S. v. Bess*, 357 U.S. at 56, 78 S.Ct. at 1057–58: *see also U.S. v. Brosnan*, 363 U.S. 237, 240, 80 S.Ct. 1108, 1111, 4 L.Ed.2d 1192 (1960) (stating that "a deceased's property in insurance policies on his own life [is] limited to their cash surrender value and [does] not extend to their proceeds, which he may not enjoy"); *U.S. v. Metropolitan Life Insurance*, 874 F.2d 1497 (11th Cir.1989). Furthermore, 26 U.S.C. § 6332 provides the requirements for sur-

rendering property subject to levy. Section 6332(b)(2) provides that an organization that issues an insurance contract may satisfy a levy by paying "the amount which the person against whom the tax is assessed could have had advanced to him by such organization ... increased by the amount of any advance (including contractual interest thereon) made to such person on or after the date such organization had actual notice or knowledge ... of the existence of the lien." 26 U.S.C. § 6332(b)(2). The Eleventh Circuit has interpreted this to mean that "[u]nder section 6332(b), the IRS can levy against only the cash loan value of a life insurance policy or endowment contract." *U.S. v. Metropolitan,* 874 F.2d at 1500. It is undisputed that the life insurance policy did not have a cash surrender value at the time the petition was filed and the trustee has presented no evidence concerning the existence of "cash loan value." Thus, the trustee's argument must fail.

█ Even if the IRS could levy against the policy pursuant to its lien, there is absolutely no authority to support the trustee's argument that this would somehow give him the right to liquidate the policy. There are countless instances in which a creditor may have a valid lien against property which is either exempt or is excluded from the estate. Based on the trustee's argument, it would seem that he would have the power to liquidate any exempt property which may be subject to a creditor's lien. The fallacy of this argument is so obvious that it needs no further discussion.

### Conclusion

For the reasons discussed herein, the trustee's objection to the debtor's claim of exemption in personal property, exceeding $1,000, is sustained, and the trustee's objection to the Debtor's claim of exemption in the life insurance policy is overruled. A separate order shall be entered in accordance herewith.