**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| LESLIE T. GLADSTONE, Chapter 7 Trustee,<br>*Plaintiff-Appellee*,<br><br>v.<br><br>U.S. BANCORP, a Delaware corporation; U.S. BANK N.A., a banking subsidiary; and COVENTRY FIRST LLC, a Delaware limited liability company;<br>*Defendants-Appellants*,<br><br>DAVID M. GREEN,<br>*Debtor-In Re*. | No. 13-55773<br><br>D.C. No.<br>3:12-cv-00424-CAB-BLM<br><br><br>OPINION |

Appeal from the United States District Court
for the Southern District of California
Cathy Ann Bencivengo, District Judge, Presiding

Argued and Submitted
June 2, 2015—Pasadena, California

Filed January 8, 2016

Before:  Sidney R. Thomas, Chief Judge, Consuelo M. Callahan, Circuit Judge and James K. Singleton,[*] Senior District Judge.

Opinion by Chief Judge Thomas

---

## SUMMARY[**]

### Bankruptcy

The panel affirmed the district court's reversal of the bankruptcy court's summary judgment in a chapter 7 trustee's adversary proceeding seeking to recover the market value of life settlements under which the debtor's unmatured term life insurance policies were sold to defendants.

Defendants continued to pay the policy premiums and collected the death benefits when the debtor died. The panel held that the debtor's interests in the insurance policies, including the secondary market value of the policies and resulting life settlements, constituted a recoverable "interest of the debtor in property" pursuant to 11 U.S.C. § 548(a)(1). The panel concluded that the debtor had a legal and equitable interest in the property within the meaning of 11 U.S.C. § 541(a), and the property was not excluded from the estate under § 541(b).

---

[*] The Honorable James K. Singleton, Senior District Judge for the U.S. District Court for the District of Alaska, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel held that the trustee's avoidance action was not time-barred under 11 U.S.C. § 546(a)(1) because the debtor's fraudulent concealment equitably tolled this statute of limitations.

The panel also affirmed the district court's conclusion that the bankruptcy trustee should have been granted leave to amend the complaint. The panel remanded the case for further proceedings consistent with its opinion.

## COUNSEL

Susan C. Stevenson (argued) and Jennifer E. Duty, Pyle Sims Duncan & Stevenson, San Diego, California, for Defendants-Appellants.

Sean C. Coughlin (argued), Financial Law Group, La Jolla, California, for Plaintiff-Appellee.

Roland R. Peterson and Angela M. Allen, Jenner & Block, LLP, Chicago, Illinois; Carl N. Wedoff, Jenner & Block, LLP, New York, New York, for Amicus Curiae National Association of Bankruptcy Trustees.

## OPINION

THOMAS, Chief Judge:

In recent years, a substantial market has developed for the purchase of unmatured term life insurance policies. In these "viatical settlement" or "life" settlement" transactions, the policyholder receives a lump-sum settlement greater than the

cash surrender value of the policy, but less than the policy's death benefit. The purchaser continues to pay the policy premiums, and collects the death benefit when the policyholder dies. The purchaser then typically offers the life insurance benefit of the policy to potential investors. *See Huskey v. Tolman (In re Tolman)*, 491 B.R. 138, 144 (Bankr. D. Idaho 2013).

Viatical settlements often occur when the policyholder is terminally ill and needs funds to pay for end-of-life care or under other circumstances when the policyholder needs "present cash more than the security of a death benefit." *Tolman*, 491 B.R. at 144; *see also Life Partners, Inc. v. Morrison*, 484 F.3d 284, 287 (4th Cir. 2007). In this case, the purchasers paid approximately $507,000 for life settlements with the debtor and received $9,000,000 in death benefits when he died shortly thereafter.

The bankruptcy trustee filed an adversary proceeding to recover the market value of the life settlements. The question presented in this case is whether the debtor's interests in the term life insurance policies, including the secondary market value of the policies and resulting life settlements, constitute a recoverable "interest of the debtor in property" pursuant to 11 U.S.C. § 548(a)(1). We conclude that they do, and we affirm the judgment of the district court.

I

Facing financial difficulties, David Green filed a voluntary Chapter 7 bankruptcy petition on September 12, 2007. Leslie Gladstone (the "Trustee") was appointed Chapter 7 trustee of the bankruptcy estate (the "Estate").

David Green died on February 22, 2008, about five months after filing his Chapter 7 petition.

David Green failed to disclose a number of assets when he filed his Chapter 7 petition. This appeal concerns three undisclosed life settlements executed between David Green and Coventry First, LLC (collectively with U.S. Bancorp and U.S. Bank National Association, "Defendants"), which the Trustee seeks to avoid and recover as fraudulent transfers.

In the months preceding the filing of his Chapter 7 petition, David Green took steps to transfer ownership of the three policies to consummate the life settlements. David Green did not disclose any of the life settlements on the Statement of Financial Affairs he submitted with his Chapter 7 petition. Nor did he disclose the life settlements at his § 341 First Meeting of Creditors, when he was questioned under oath by the Trustee. The life settlements were negotiated in two sets of transactions, which were brokered by Robert Hamzey, a friend of the Greens.

The first set of transactions involved two Transamerica policies. Policy 3530 was issued to insure the life of David Green for his own benefit, with a face value of $2,000,000. Policy 4528 was issued to insure the life of David Green for his own benefit, with a face value of $4,000,000. David Green transferred the beneficial interest in the Transamerica policies to his wife, Eileen Green. Eileen Green subsequently signed a life settlement agreement to sell Policy 3530 for $5,000 and Policy 4528 for $188,000 to the Defendants. She received $193,000 from the Defendants about one month before David Green filed his bankruptcy petition. After his death five months later, Defendants received $6,000,000, the face value death benefits for the Transamerica policies.

The second set of transactions involved what became Protective Policy 3280. That policy was issued to insure the life of David Green for the benefit of Eileen Green, with a face value of $3,000,000. A month before filing bankruptcy, David and Eileen Green signed a life settlement agreement to convert the term life policy to a universal policy and sell it to Defendants for $280,000 plus $34,776.66 in premium reimbursements. Eileen Green transferred the beneficial interest of Protective 3280 to Defendants shortly before the bankruptcy. However, Protective did not transfer the policy to the Defendants until after the bankruptcy was filed, whereupon Eileen Green was paid $314,776.66 per the life settlement agreement. After David Green's death, Defendants received the $3,000,000 proceeds from the policy.

In sum, Defendants paid approximately $507,000 for the life settlements and received $9,000,000 in death benefits when Green died a few months after the viatical settlement transactions. The following chart summarizes the three policies and life settlements at issue:

| Policy | Face Value | Settlement | Premium Reimbursement |
|---|---|---|---|
| Transamerica 3530 | $2,000,000 | $5,000 | none |
| Transamerica 4528 | $4,000,000 | $188,000 | none |
| Protective 3280 | $3,000,000 | $280,000 | $34,776.66 |

In addition to the life settlements at issue in this appeal, other assets connected to the Estate changed hands in the weeks and months leading up to David Green's bankruptcy filing. These assets include two other life insurance policies, a condominium, and a mortgage note owned by the Greens. None of the life settlements with Defendants and none of the

foregoing other assets and transfers were disclosed when David Green filed his Chapter 7 petition on September 12, 2007, nor were they disclosed on his Section 341(a) questionnaire,  or at the Section 341(a) meeting of creditors. These transactions frustrated the Trustee's task to assemble the bankruptcy estate.

The Trustee learned of David Green's death a few weeks after he died.  Over a year later, by coincidence alone, she found out about David Green's undisclosed other assets and transfers at a Section 341 meeting in another bankruptcy proceeding to which she was appointed.  Based on that information, and after Eileen Green and Hamzey declined to cooperate with her investigation that followed, the Trustee sought and received approval to conduct examinations of and document production by Eileen Green and Hamzey pursuant to Federal Rule of Bankruptcy Procedure 2004.  At Hamzey's Rule 2004 examination, the Trustee gathered more information about other assets and transfers not at issue in this appeal.  With this information in hand, the Trustee filed an initial adversary complaint seeking recovery and avoidance of the other assets and transfers and an emergency motion for extension of the statute of limitations.  The bankruptcy court granted the motion, and the statute of limitations was extended to December 11, 2009.

On August 9, 2010, David Green's stepson Frank Ray called the Trustee's attorney and told him about the life settlements at issue in this appeal.  The next day, Ray delivered copies of the relevant purchase agreements that documented the two life settlement transactions.  Based on this information and documents subpoenaed from the Defendants, the Trustee filed the first amended complaint,

which sought to avoid the transfer of the Transamerica and Protective life insurance policies to Defendants.

The Trustee pursued the adversary proceeding against Defendants in the months that followed, but was met with requests to postpone depositions and other discovery until after a hearing on Defendants' anticipated motion for summary judgment. The Trustee eventually received interrogatory answers and moved the bankruptcy court for leave to file a second amended complaint because discovery showed that the Protective 3280 life settlement did not become effective until after the bankruptcy was filed and to make further allegations about the pre-petition transfers.

The bankruptcy court granted Defendants' motion for summary judgment and denied the Trustee's motion for leave to file the second amended complaint in a minute order. The bankruptcy court did not issue findings of fact and conclusions of law or otherwise state grounds upon which the motions were adjudicated.

The Trustee appealed the judgment of dismissal to the district court. The district court reversed the judgment entered by the bankruptcy court and reversed the bankruptcy court's order denying the Trustee leave to file the second amended complaint. This timely appeal followed.

II

The district court heard the initial appeal pursuant to 28 U.S.C. § 158(a) (2012). We have jurisdiction to review the district court's order pursuant to 28 U.S.C. § 158(d)(1). "The role of the district court and this court are basically the same in the bankruptcy appellate process. Therefore, we

review the bankruptcy court decision directly. We review the bankruptcy court's findings of fact for clear error, and its conclusions of law de novo." *Microsoft Corp. v. DAK Indus., Inc.* (*In re DAK Indus., Inc.*), 66 F.3d 1091, 1094 (9th Cir. 1995) (citations omitted). In conducting de novo review of the bankruptcy court's grant of summary judgment, we "must view the evidence in the light most favorable to the non-moving party and 'determine whether there are any genuine issues of material fact and whether the bankruptcy court correctly applied the substantive law.'" *Caneva v. Sun Cmtys. Operating Ltd. P'ship (In re Caneva)*, 550 F.3d 755, 760 (9th Cir. 2008) (quoting *Parker v. Cmty. First Bank (In re Bakersfield Westar Ambulance, Inc.)*, 123 F.3d 1243, 1245 (9th Cir. 1997)).

## III

As we have noted, the question presented in this case is whether the debtor's interests in the term life insurance policies, including the secondary market value of the policies and resulting life settlements, constitute a recoverable "interest of the debtor in property" pursuant to 11 U.S.C. § 548(a)(1). The district court correctly held that they were.

## A

In determining the scope of an "interest of the debtor in property" under § 548, we begin with the statutory language of the Bankruptcy Code, employing the usual tools of statutory construction. We look first at the plain language, examining "not only the specific provision at issue, but also the structure of the statute as a whole, including its object and policy." *Hawkins v. Franchise Tax Bd. of Cal.,* 769 F.3d 662, 666 (9th Cir. 2014) (quoting *Children's Hosp. & Health Ctr.*

*v. Belshe*, 188 F.3d 1090, 1096 (9th Cir. 1999)).   If the statutory language is unambiguous, our inquiry is at an end. *Id.*  If the language is ambiguous, then we examine legislative history, and "also look to similar provisions within the statute as a whole and the language of related or similar statutes to aid in interpretation." *Id.*  (quoting *United States v. LKAV*, 712 F.3d 436, 440 (9th Cir. 2013)).

The Bankruptcy Code does not define "an interest of the debtor in property."  However, we have guidance from the Supreme Court as to its meaning.  The Court has explained that the phrase "is best understood as that property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings."  *Begier v. I.R.S.*  496 U.S. 53, 58 (1990).  Therefore, the interest must be analyzed under § 541, which defines the property of the estate.  *Id.* at 58–59; *see also Taylor Assocs. v. Diamant (In re Advent Mgmt. Corp.)*, 104 F.3d 293, 295 (9th Cir. 1997) (confirming that "an interest of the debtor in property" under § 547 and § 548 is determined by whether the interest would have been "property of the estate" under § 541).

Under the Bankruptcy Code, the filing of a bankruptcy petition creates a bankruptcy estate.  § 541(a).  With certain exceptions, the estate is comprised of the debtor's legal or equitable interests in property "wherever located and by whomever held." *Id.*   As the Supreme Court has noted, "Congress intended a broad range of property to be included in the estate." *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204 (1983)*; see also Chappel v. Proctor (In re Chappel)*, 189 B.R. 489, 493 ( B.A.P. 9th Cir. 1995) ("The legislative history of the Bankruptcy Code reveals that the concept of property of the estate is to be interpreted broadly.").

Indeed, the legislative history indicates that § 541(a) would "bring anything of value that the debtors have into the estate." H.R. Rep. 95-595 (1977), at 176, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5963, 6136. The scope of § 541(a) of the Bankruptcy Code is much greater than that of the prior Bankruptcy Act of 1898. *Coben v. Lebrun (In re Golden Plan of Cal., Inc.)*, 37 B.R. 167, 169 (Bankr. E.D. Cal. 1984).

The debtor held the ownership title to the life insurance policies prior to their transfer. "[P]roperty of the estate" includes all property in which the debtor has legal title except "to the extent of an equitable interest in such property that the debtor does not hold." *In re Advent Mgmt. Corp.*, 104 F.3d at 295. As indicated by the life settlements in this case, the term life insurance policies owned by the debtor had market value to the debtor independent of the death benefit or equitable beneficial interest. Therefore, because all of the debtor's legal and equitable interests became part of the bankruptcy estate when the case was commenced, his interest in the term life insurance policies and the life settlements would have been part of the bankruptcy estate under § 541(a) if he had not transferred them. Accordingly, the life insurance policies constitute "an interest of the debtor in property" within the meaning of § 548, except to the extent that a third party had a beneficial or equitable interest.

B

Two sections of the Bankruptcy Code allow a debtor to retain assets that would otherwise form part of the bankruptcy estate under § 541(a) and be subject to creditors' claims: § 541(b) and § 522. Section 541(b) identifies certain types of property that are expressly excluded from the bankruptcy

estate from the outset. Section 522 provides an avenue for the debtor to exempt certain property from the estate.

In short, all equitable and legal interests that the debtor has when the bankruptcy petition is filed become property of the estate, unless excluded by statute or properly exempted by the debtor. If no exclusion or exemption applies, or if the debtor has failed to claim qualifying property as exempt, then the debtor's interest in the property remains property of the bankruptcy estate. Therefore, the property falls within the reach of § 541(a), unless excluded by § 541(b) or properly exempted under § 522.

1

The district court properly concluded that the life settlements at issue were not excluded from the estate under § 541(b). In contrast to the broad scope of § 541(a), § 541(b) sets forth "narrow exceptions to the interests of the debtor which are not considered as property of the estate." *Southtrust Bank of Ala., N.A. v. Thomas (In re Thomas)*, 883 F.2d 991, 995 (11th Cir. 1989). Neither life insurance policies, nor viatical settlements are listed among the § 541(b) exclusions. Therefore, under its plain terms, they are not excluded from becoming property of the bankruptcy estate pursuant to § 541(b). *Wallace v. Crawford (In re Meyers)*, 483 B.R. 89, 98 (Bankr. W.D.N.C. 2012).

Defendants argue that life insurance policies and life settlements are excluded from the bankruptcy estate by a judicially created exclusion. Based on a line of authority tracing to Supreme Court decisions interpreting the Bankruptcy Act of 1898, Defendants contend that the Estate's interest is limited to the cash surrender value of the life

insurance policies. The policies at issue have no cash surrender value, so if Defendants are correct, the Trustee's avoidance action fails as a matter of law.

However, Defendants' argument is premised on a provision of the Bankruptcy Act of 1898, which was abrogated by the adoption of the Bankruptcy Code in 1978. Section 70(a) of the Bankruptcy Act of 1898 specified, in relevant part:

> That when any bankrupt shall have any insurance policy, which has a cash surrender value payable to himself, his estate, or personal representatives, he may, within thirty days after the cash surrender value has been ascertained and stated to the trustee by the company issuing the same, pay or secure to the trustee the sum so ascertained and stated, and continue to hold, own, and carry such policy free from the claims of the creditors participating in the distribution of his estate under the bankruptcy proceedings; otherwise the policy shall pass to the trustee as assets[.]

This section's purpose was "construed . . . to vest the surrender value in the trustee for the benefit of the creditors, and not otherwise to limit the bankrupt in dealing with his policy." *Burlingham v. Crouse*, 228 U.S. 459, 473 (1913); *see also In re Holden*, 114 F. 650, 652 (9th Cir. 1902). Defendants argue that this authority implies that life settlements are excluded from a bankruptcy estate.

*Burlingham*, *Holden*, and their progeny, including *Lekas v. Mann (In re Lekas)*, 299 B.R. 597, 602 (Bankr. D. Ariz.

2003), do not state the rule defining the scope of a bankruptcy estate under the Bankruptcy Code, which supplanted the Bankruptcy Act of 1898. Rather, *Burlingham* interprets a section of the Bankruptcy Act of 1898, which is no longer in force. Because Green's bankruptcy was filed after October 1, 1979, the Bankruptcy Code applies, not the prior Bankruptcy Act of 1898. *See Washburn & Roberts, Inc. v. Park East (In re Washburn & Roberts, Inc.)*, 795 F.2d 870, 873 (9th Cir. 1986) ("Congress provided that in any bankruptcy case commenced after October 1, 1979, the old Bankruptcy Act of 1898 would not apply."). The Court's construction of § 70(a) in *Burlingham* was accordingly abrogated by statute when the Bankruptcy Reform Act of 1978 was enacted.

Indeed, Congress specifically eliminated the prior section 70(a) in adopting the § 541(b) exclusions. *See* Bankruptcy Reform Act of 1978, Pub. L. No. 95-598, § 541, 92 Stat. 2549 (1978). Congress was well aware of not only the prior statutory provision, but the case law interpreting it. *In Re Myers*, 483 B.R. at 98. Because the prior exclusion was not included among the exclusions listed in § 541(b) when the Bankruptcy Code was enacted, "the canon *expressio unius est exclusio alterius* . . . has force" as "the items expressed are members of an 'associated group or series,' justifying the inference that items not mentioned were excluded by deliberate choice, not inadvertence." *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003) (quoting *United States v. Vonn*, 535 U.S. 55, 65 (2002)). The legislative history of the Bankruptcy Reform Act of 1978 demonstrates that Congress considered the definition of estate property presented in § 70(a) of the Bankruptcy Act of 1898. *See* H.R. Rep. No. 95-595, at 367 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6323–24. Therefore, "it is fair to suppose that Congress

considered the unnamed possibility and meant to say no to it." *Barnhart*, 537 U.S. at 168.[1]

The structure of the Bankruptcy Code buttresses our conclusion. In dealing with the issue of life insurance, Congress chose not to exclude it from the estate under § 541(b), but to provide an elective exemption under § 522, which provided an exemption for "[a]ny unmatured life insurance contract owned by the debtor, other than a credit life insurance contract." 11 U.S.C. § 522(d)(7).

Even if it were not inapposite due to statutory abrogation, *Burlingham* and its progeny are not on point with the facts of David Green's bankruptcy. The district court correctly observed that *Burlingham* is not controlling because the Court did not "specifically address the possibility of the policies being sold on the secondary market[.]" This century-old decision cannot be fairly read to state binding precedent as to the treatment of life settlements by a bankruptcy trustee, as

---

[1] This conclusion dispatches Defendants' argument that Green's trustee lacked power to change the beneficiary named in Green's policies after he filed for bankruptcy. Defendants support that argument with decisions interpreting the Bankruptcy Act of 1898 and associated jurisprudence. *See In re Herrell*, 210 B.R. 386, 390 (Bankr. N.D. Fla. 1997); *Lekas*, 299 B.R. 597, 603 (Bankr. D. Ariz. 2003). Because we hold that the 1978 Act expanded a Trustee's interest in the life insurance policy of a debtor, we find unpersuasive those holdings that predicate a Trustee's power to change beneficiaries on surrender values. *See Lekas*, 299 B.R. at 602 (citing, *inter alia*, *Herrell*, 210 B.R. at 390); *see also Meyers*, 483 B.R. at 103 ("I therefore respectfully disagree with *Herrell*'s conclusion about these Act decisions construing Section 70a(5). They, like Section 70a(5), have been superseded by the Bankruptcy Code."). Each policy in this case empowered Green to change the policy's beneficiary. As a result, and for reasons provided above, that power passed to the Trustee upon the filing of Green's petition. § 541(a)(1).

the secondary market for life insurance policies and the life settlement industry developed only in the last 30 years. In fact, shortly after it decided *Burlingham*, the Court in *Cohen* presciently recognized that a rule categorically excluding a life insurance policy from a bankruptcy estate would make the policies a vehicle for subterfuge. *Cohen v. Samuels*, 245 U.S. 50, 53 (1917) ("[T]o hold that there was nothing of property to vest in a trustee would be to make an insurance policy a shelter for valuable assets and, it might be, a refuge for fraud.").

For all these reasons, the district court correctly concluded that the debtor's interests in life insurance policies and life settlements were not excluded from the property of the bankruptcy estate pursuant to § 541(b).[2]

2

The second method by which property may be removed from the bankruptcy estate is by exemption under § 522. In contrast to the operation of the prior Bankruptcy Act of 1898, the property of the estate created at the commencement of a case under the Bankruptcy Code includes even exempt property. *Taylor v. Freeland & Kronz*, 503 U.S. 638, 642 (1992). However, the debtor may exempt certain property from the bankruptcy estate by taking affirmative steps to claim the property as exempt under § 522. *Id.*; *see also*

---

[2] Defendants also suggest that § 541(d) is a basis to exclude the policies from the bankruptcy estate. This claim is easily dispatched because that section of the Bankruptcy Code "was adopted by Congress to address bona fide secondary mortgage market transactions," *Chbat v. Tleel (In re Tleel)*, 876 F.2d 769, 773 (9th Cir. 1989), and is therefore plainly inapposite.

*Woodson v. Fireman's Fund Ins. Co. (In re Woodson)*, 839 F.2d 610, 616 n.8 (9th Cir. 1988).

Section 522(d) enumerates federal exemptions available to the debtor. However, under § 522(b)(2), "[t]his exemption scheme can be supplanted by states that choose to provide their own menu of exemptions." *Orange Cnty.'s Credit Union v. Garcia (In re Garcia)*, 709 F.3d 861, 864 (9th Cir. 2013). California has elected to opt-out of the federal exemptions, so California state law exemptions apply. *Id.*; *see also* Cal. Code Civ. Proc. § 703.130.

The Defendants claim, in the alternative to their § 541(b) argument, that the life insurance settlements are exempt under § 522 because California has opted out of the federal exemption schedule, and California provides an exemption pursuant to Cal. Code Civ. Proc. § 704.100.

This proposition is dubious, at best.[3] However, it is unnecessary for us to reach the merits of it for three independent reasons: the debtor did not claim the property as exempt; the Defendants lack standing to raise the argument; and the Defendants failed to present the argument to the district court.

First, the debtor did not claim the settlements or insurance policies as exempt within the required period. Section 522(l) requires the debtor to file a list of property to be claimed as exempt. Federal Rule of Bankruptcy Procedure 4003(a)

---

[3] Cal. Code Civ. Proc. § 704.100(a) provides that unmatured life insurance policies are exempt without making a claim. However, it specifically excludes the policy loan value, which represents the policyholder's equitable interest.

requires the debtor to list exempt property on the schedule of assets, and Rule 1007(c) requires the debtor to file the schedule with the voluntary bankruptcy petition. A debtor may, pursuant to Rule 1009(a), seek to amend an exemption claim before the case is closed. The debtor did not claim the property as exempt within the period specified by the Rules and did not seek to amend the schedules. In short, there is no exemption claim pending as to the relevant assets.

Second, the Defendants lack standing to raise this issue. "[A]n exemption is provided only for the benefit of the debtor," *Fox v. Smoker (In re Noblit)*, 72 F.3d 757, 758 (9th Cir. 1995). "If the exempt property is transferred, the debtor has in essence waived the exemption, and the transferee cannot avail herself of the exemption in a subsequent avoidance action." *Id.* Here, David Green waived his exemption when he shifted the beneficial interest of his insurance policies to Defendants, via his wife. Defendants, removed third parties, lack standing to now claim his exemption as a defense to the Trustee's avoidance action. *Id.* at 758–59.

Third, the Defendants did not present this argument either to the bankruptcy or district courts. We decline to exercise our discretion to consider arguments raised for the first time on appeal. *See Robinson v. Jewell*, 790 F.3d 910, 915 (9th Cir. 2015).

Therefore, without reaching the merits and unnecessarily opining on an issue of state law, we reject Defendants' argument that the property is exempt under § 522.

C

Because the debtor had a legal and equitable interest in the property at issue within the meaning of § 541(a), the property was not excluded from the estate under § 541(b), and the property was not the subject of a proper exemption in this case, we agree with the district court that it constituted "an interest of the debtor in property" within the meaning of § 548.

IV

The district court also properly held that the Trustee's avoidance action was not time-barred because the debtor's fraudulent concealment equitably tolled the statute of limitations from commencing. The trustee's avoidance action was subject to the two-year limitations period in § 546(a)(1)(A). The statute of limitations in § 546(a)(1) may be subject to equitable tolling. *Ernst & Young v. Matsumoto (In re United Ins. Mgmt., Inc.)*, 14 F.3d 1380, 1387 (9th Cir. 1994). "Under the equitable tolling doctrine, where a party 'remains in ignorance of [a wrong] without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party.'" *Id*. at 1384 (brackets in original) (quoting *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 363 (1991)).

There is no serious dispute that David Green or his agents took steps to conceal the life settlement transactions with Defendants by transferring the beneficial interest in the policies to his wife before the sale to Defendants was

completed. Nor is there any serious dispute that other assets of the estate were concealed. The record shows that the trustee diligently pursued collection of assets, but was prevented from discovering the existence of the life settlement transactions because of the debtor's actions to conceal them. The district court properly concluded, based on the undisputed facts, that application of equitable tolling was appropriate.

Defendants argue that equitable tolling is inapplicable because they are innocent third parties who did not intentionally conceal facts from the Trustee. This argument is foreclosed by *In re Olsen*, in which we applied equitable tolling to cut off a third party's limitations claim where the debtors—not the third party—concealed a conveyance from the Trustee. *Olsen v. Zerbetz (In re Olsen)*, 36 F.3d 71, 72–73 (9th Cir. 1994); *see also Holmberg v. Armbrecht*, 327 U.S. 392, 396 (1946) ("Equity will not lend itself to . . . fraud [that prevents the plaintiff from being diligent] and historically has relieved from it.").

Furthermore, the record shows that the Defendants necessarily knew that the debtor had transferred the beneficial interests in the life insurance policy to his wife. It further shows that the Trustee went to great lengths to discover the multiple undisclosed life insurance policies held by the debtor, and that many of the delays documented in the record were due to the Defendants' requests or the actions of Defendants' counsel.

Under the principles established in *Lampf*, 501 U.S. at 363, the statute of limitations was tolled until the fraudulent transfers were revealed to the Trustee's attorney by David Green's stepson on August 10, 2010. The first amended

complaint, filed on February 1, 2011, was therefore filed within the two-year § 546(a)(1)(A) limitations period.

V

Finally, the district court correctly concluded that the bankruptcy court should have granted the Trustee leave to amend her avoidance action. The Trustee sought to add allegations regarding the post-petition transfer of the Protective policy and to allege that the policies were transferred directly by David Green to Defendants in April 2007. The bankruptcy court denied leave to amend but provided no reasons for the denial. We "strictly review[]" the bankruptcy court's denial of leave to amend "in light of the strong policy permitting amendment." *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 439 (9th Cir. 1997) (internal quotation omitted).

The Trustee sought leave to amend because she discovered new evidence: an executed copy of the Protective beneficiary transfer form. Defendants did not initially produce that form in response to the Trustee's subpoena. Any delay associated with the Trustee's motion therefore stems in part from Defendants.

Amendment under these circumstances would not have been futile. The Protective form supports the Trustee's § 549 avoidance claim. Taken with the policy favoring amendment, these factors outweigh the fact that the Trustee previously amended the complaint. *Cf. Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990). The district court properly held that the Trustee should have been granted leave to amend.

VI

The district court properly concluded that summary judgment was not appropriate, and that the Trustee should have been granted leave to amend.  We affirm the district court and remand for further proceedings consistent with this opinion.  We need not, and do not, reach any other issues urged by the parties.

**AFFIRMED.**