FILED

FEB 24 2016

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**ORDERED PUBLISHED**

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

In re:                              )    BAP No.   CC-15-1180-FCTa
                                    )
CHARLENE M. MILBY,                  )    Bk. No.   9:11-14487-PC
                                    )
            Debtor.                 )    Adv. No.  9:14-01132-PC
_____)
                                    )
PATRICIA A. TEMPLETON and           )
G. CRESSWELL TEMPLETON III,         )
individuals on behalf of            )
the Bankruptcy Estate of            )
Debtor Charlene M. Milby, and       )
derivatively on behalf of           )
Charlene's Transportation,          )
Inc.,                               )
                                    )
            Appellants,             )
                                    )
v.                                  )    **OPINION**
                                    )
JON A. MILBY; D&J TRUCKING          )
CO.; SANDRA HOLDER MILBY;           )
SANJON, INC.; 5TH ST CONDO,         )
LLC; CHARLENE M. MILBY;             )
CHARLENE'S TRANSPORTATION,          )
INC.,                               )
                                    )
            Appellees.              )
_____)

Argued and Submitted on January 21, 2016
at Pasadena, California

Filed – February 24, 2016

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Peter Carroll, Bankruptcy Judge, Presiding

_____

Appearances:   Daniel Joseph McCarthy of Hill, Farrer & Burrill,
               LLP argued on behalf of Appellants Patricia A.
               Templeton and G. Cresswell Templeton III; Karen L.
               Grant argued on behalf of Appellees Jon A. Milby,
               D&J Trucking Company, Sandy Holder Milby, Sanjon,

Inc., 5th St. Condo, LLC, Charlene M. Milby, and Charlene's Transportation, Inc.

Before: FARIS, CORBIT[*], and TAYLOR, Bankruptcy Judges.

FARIS, Bankruptcy Judge:

**INTRODUCTION**

Appellants Patricia A. Templeton and G. Cresswell Templeton III initiated an adversary proceeding on behalf of themselves and Debtor Charlene M. Milby's bankruptcy estate to avoid fraudulent transfers. Appellees Jon A. Milby, D&J Trucking Company, Sandy Holder Milby, Sanjon, Inc., 5th St. Condo, LLC, Charlene M. Milby, and Charlene's Transportation, Inc. moved for summary judgment on the ground that the claims were untimely by virtue of the two-year statute of limitations under § 546(a)(1).[1] The bankruptcy court agreed with Appellees that certain of the Templetons' claims were untimely, holding that, while chapter 7 trustee Sandra K. McBeth was diligent and could not have discovered the causes of actions earlier, she did not diligently pursue the claims after discovery. The court thus granted summary judgment and dismissed those claims pursuant to § 546(a)(1)(A).

---

[*] Honorable Frederick P. Corbit, Chief United States Bankruptcy Judge for the Eastern District of Washington, sitting by designation.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037, and all "Civil Rule" references are to the Federal Rules of Civil Procedure, Rules 1-86.

We hold that the bankruptcy court erred in its application of equitable tolling to the two-year statute of limitations. We affirm other decisions of the bankruptcy court in a separate memorandum entered concurrently with the entry of this opinion. Accordingly, we AFFIRM IN PART and VACATE IN PART the bankruptcy court's order granting summary judgment; VACATE the court's order denying reconsideration; and REMAND this action for further proceedings consistent with our opinion.

## FACTUAL BACKGROUND[2]

The Debtor is a materials hauling broker who conducts certain business operations through a wholly-owned company, Charlene's Transportation, Inc. ("CTI"). The Debtor filed for chapter 7 bankruptcy on September 22, 2011, and the Trustee was appointed to administer her estate. The Templetons filed a proof of claim in the amount of $2,756,077.21.

The Debtor has an adjudicated history of concealment and refusal to produce relevant information. The Templetons initiated an adversary proceeding to deny discharge under § 727 and determine the dischargeability of the Debtor's debts to the Templetons under § 523. The Templetons argued that, under § 727, the court should deny the Debtor's discharge because she knowingly made false and deceptive statements in her schedules and testimony, failed to disclose assets, failed to produce documents requested by the Trustee, and was unable to explain the

---

[2] The Templetons' excerpts of record are incomplete and make reference to certain documents on the bankruptcy court's docket without including the actual document. We have exercised our discretion to review the bankruptcy court's docket, as appropriate. See Woods & Erickson, LLP v. Leonard (In re AVI, Inc.), 389 B.R. 721, 725 n.2 (9th Cir. BAP 2008).

3

loss of assets. The Templetons further requested that the court deny discharge of the Debtor's debt to them under § 523(a), because the Debtor had fraudulently induced them to co-purchase real property by making certain false representations. The Debtor and CTI failed to respond to discovery requests and defied the court's discovery orders. As a discovery sanction, the bankruptcy court entered a default judgment against the Debtor, denied the Debtor's discharge pursuant to § 727(a)(4) and (5), and awarded the Templetons $349,623.54 pursuant to § 523(a)(2).

In the meantime, the Trustee and the Templetons both investigated and began to assert additional claims against the Debtor and her affiliates. The Trustee was able to negotiate an early compromise of an insider preference claim against the Debtor's father, Jon A. Milby, and Mr. Milby's business, D&J Trucking, Co., Inc., receiving $7,500 in settlement of a claim based on an undisclosed $10,000 payment from the Debtor's bank account to Mr. Milby or D&J Trucking.

The normal deadline (absent tolling) to commence actions to recover avoidable transfers was two years after the bankruptcy filing, or September 22, 2013. Not surprisingly, there was significant activity just before that deadline.

On September 5, 2013, the Templetons' counsel provided the Trustee with "a binder consisting of descriptions of assets and transfers that the Templetons believed might be recoverable for the benefit of the estate, as well as some supporting documentation . . . ." On September 17, the Trustee requested further documentation from the Templetons' counsel regarding one of the transfers. The next day, counsel provided the requested

4

information.

On September 19, 2013, three days before the statute of limitations was set to expire, the Trustee brought an adversary proceeding (the "Trustee's Avoidance Action") against the Debtor's father and one of his companies to avoid and recover fraudulent transfers, preferential transfers, and unauthorized post-petition transfers. The Trustee's Avoidance Action did not state claims based on the transfers identified by the Templetons; the Trustee later explained that, when she filed the Trustee's Avoidance Action, she did not have adequate documentation or supporting evidence about those transfers and was concerned about the Debtor's track record of non-cooperation in discovery and the potential litigation costs to the estate.[3]

The Trustee negotiated a settlement of the Trustee's Avoidance Action. The Templetons objected to the settlement agreement, arguing that the release should cover only the transfers alleged in the complaint and not other transfers. The Trustee, the Templetons, and the settling defendants resolved this dispute by stipulating to narrow the scope of the releases to the transfers alleged in the Trustee's Avoidance Action; thus, the Trustee preserved all other claims. The bankruptcy court approved the settlement agreement with the narrowed releases.

In August 2014, while the motion to approve the settlement of the Trustee's Avoidance Action was pending, the Templetons approached the Trustee and discussed the possibility of being

---

[3] The Trustee also filed a second adversary proceeding to compel the Debtor, the Debtor's husband, Rex Rossoll, and Mr. Rossoll's company, Double R Cutting Horse LLC, to turn over assets that the Debtor had not disclosed in her schedules.

appointed to pursue the fraudulent transfer claims that they had brought to the Trustee's attention in September 2013. The Trustee agreed, and the bankruptcy court approved the appointment.

A few days later, on September 17, 2014, the Templetons initiated the adversary proceeding from which this appeal arises. They asserted claims on behalf of themselves and the Debtor's estate, including derivative claims for CTI. The Templetons alleged claims for (1) actual fraud under § 544(b) and California Civil Code § 3439.04(a)(1); (2) constructive fraud under § 544(b) and California Civil Code §§ 3439.04(a)(2) and 3439.05; (3) aiding and abetting fraudulent transfers; and (4) unjust enrichment. They alleged that CTI is the Debtor's alter ego.

Among other things, the Templetons challenged transfers from certain bank accounts allegedly owned by the various Appellees. They claimed that the Debtor owned three bank accounts ending in -0242, -2368, and -0449. (As to account -0449, the Templetons alleged that the account was opened "under the name 'Milby, Charlene dba Charlene's Transportation.'") The Templetons stated that CTI owned a bank account ending in -0526. They claimed that Mr. Milby and D&J Trucking had a bank account ending in -0589. Finally, the Templetons alleged that Sanjon, Inc. had a bank account ending in -9226.

In November 2014, Appellees filed summary judgment motions on the basis of the two-year statute of limitations in § 546(a)(1). They argued that equitable tolling did not apply, despite the Trustee's diligence, because there were no extraordinary circumstances that prevented her from bringing suit

6

within two years after the Debtor filed for bankruptcy, i.e., by September 22, 2013.

In response, the Templetons argued that the Debtor's misconduct and evasion were "extraordinary circumstances" hindering the Trustee; the two-year limitations period had been tolled until September 2013; and the Templetons' adversary complaint was filed within one year of that date. In support of the Templetons' opposition, the Trustee stated that the Debtor failed to disclose the transfers at issue in the adversary proceeding; the Debtor failed to cooperate with the Trustee's investigation; the Trustee first learned of the allegedly fraudulent transfers in September 2013 from the Templetons' attorney; and, at that time, she did not have sufficient evidence of the fraudulent transfers.

On March 2, 2015, the bankruptcy court granted the Appellees' motions. The court began by analyzing which of the Templetons' claims were brought under § 544(b) and were therefore actually subject to the limitations period of § 546(a)(1)(A). Because § 544(b) refers to "transfer[s] of an interest of the debtor in property[,]" the court held that only the transfers from the Debtor's bank accounts (the transfers identified in paragraph 30 of the complaint and related to account -0449) were covered by § 544(b). The court ruled that the transfers from the other Appellees' bank accounts (described in paragraphs 31 through 35 of the complaint) "are not subject to avoidance under § 544(b) as fraudulent . . . because they do not involve a 'transfer of an interest of the debtor in property' by the terms of the complaint." The court held that the Templetons'

7

allegations did not state a plausible claim. However, the court stated that it "is not convinced that a plausible claim for avoidance of the alleged transfers cannot be pled by amendment under a different theory" and dismissed with leave to amend the first three counts to the extent they were based on paragraphs 31 through 35.[4]

Having determined which claims were subject to § 546(a)(1)(A), the court next turned to the timeliness of the claims to avoid the transfers from the Debtor's accounts (alleged in paragraph 30 of the complaint). The court found that the Trustee had been diligent and "[t]here is no significantly probative evidence in the record that [the Trustee] discovered, or could have discovered, the Subject Transfers earlier than September 2013, when she had only three days to evaluate the Subject Transfers before expiration of the limitations period." Nevertheless, the court held that the Trustee "was dilatory in seeking relief after discovering facts regarding the Subject Transfers and ultimately made a conscious decision not to pursue the transfers on behalf of the estate." The court dismissed with prejudice the First, Second, and Third Claims for Relief (to the extent they concerned paragraph 30) as barred by the statute of limitations.[5]

After the bankruptcy court denied their motion for reconsideration, the Templetons gave notice that they would not

---

[4] We address this portion of the bankruptcy court's decision in a separate memorandum.

[5] The court dismissed Count 4 for unjust enrichment without leave to amend on the ground that it did not state an independent cause of action. The Templetons do not challenge this ruling.

8

amend the complaint and instead filed a timely notice of appeal.

The Templetons also filed their designation of excerpts of record, but Appellees moved to strike nine items that were not before the bankruptcy court in its consideration of the motions for summary judgment. The bankruptcy court granted the motion.

The Templetons requested that this Panel take judicial notice of the stricken items or permit enlargement of the record. The motions panel denied the motion without prejudice.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334, 157(b)(1), and 157(b)(2)(F) and (H). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

(1) Whether the bankruptcy court erroneously applied the doctrine of equitable tolling when it granted summary judgment and dismissed the First, Second, and Third Claims for Relief (to the extent they are based on fraudulent transfers alleged in paragraph 30 of the complaint) as untimely under § 546(a)(1)(A).

(2) Whether this Panel should consider excerpts of record stricken by the bankruptcy court.

## STANDARDS OF REVIEW

We review de novo the bankruptcy court's decision to grant or deny summary judgment. Boyajian v. New Falls Corp. (In re Boyajian), 564 F.3d 1088, 1090 (9th Cir. 2009).

The bankruptcy court has latitude in granting relief from a strict construction of a statute of limitations and reaches its determination on a case-by-case analysis. See Scholar v. Pac. Bell, 963 F.2d 264, 267-68 (9th Cir. 1992). Thus, we review for

9

abuse of discretion the bankruptcy court's decision that the trustee could not invoke the doctrine of equitable tolling. See Baldwin Cty. Welcome Ctr. v. Brown, 466 U.S. 147, 151 (1984) (per curiam); see also Scholar, 963 F.2d at 267.

Similarly, we review for abuse of discretion the denial of a motion for reconsideration. See N. Alaska Envtl. Ctr. v. Lujan, 961 F.2d 886, 889 (9th Cir. 1992). Under an abuse of discretion standard, a reviewing court cannot reverse unless it has "a definite and firm conviction that the [court below] committed a clear error of judgment" in the conclusion it reached upon a weighing of the relevant factors. Marchand v. Mercy Med. Ctr., 22 F.3d 933, 936 (9th Cir. 1994).

**DISCUSSION**

**A.** **The bankruptcy court incorrectly applied the doctrine of equitable tolling to the statute of limitations under § 546(a)(1)(A).**

The primary issue on appeal concerns the bankruptcy court's application of equitable tolling. We hold that the bankruptcy court erred when it dismissed the § 544(b) claims as untimely because of the Trustee's alleged lack of diligence after discovery of the fraudulent transfers.[6]

**1.** **Section 546(a)(1)(A)'s two-year statute of limitations is subject to equitable tolling.**

Section 546(a)(1)(A) provides a two-year statute of limitations for avoidance actions:

(a) An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced

[6] Our discussion herein considers and disposes of arguments raised in conjunction with both the Appellees' motions for summary judgment and the Templetons' motion for reconsideration.

10

after the earlier of -

    (1) the later of -

        (A) 2 years after the entry of the order for relief; or

        (B) 1 year after the appointment or election of the first trustee under section 702, 1104, 1163, 1202, or 1302 of this title if such appointment or such election occurs before the expiration of the period specified in subparagraph (A); or

    (2) the time the case is closed or dismissed.

§ 546(a).

The statute of limitations period under § 546(a)(1)(A) may be subject to equitable tolling. Gladstone v. U.S. Bancorp., No. 13-55773, --- F.3d ----, 2016 WL 142469 at *8 (9th Cir. Jan. 8, 2016) (citing Ernst & Young v. Matsumoto (In re United Ins. Mgmt., Inc.), 14 F.3d 1380, 1387 (9th Cir. 1994)); see Young v. United States, 535 U.S. 43, 49 (2002). "Congress must be presumed to draft limitations periods in light of this background principle. . . . That is doubly true when it is enacting limitations periods to be applied by bankruptcy courts, which are courts of equity and apply the principles and rules of equity jurisprudence." Young, 535 U.S. at 49-50 (internal citations, quotation marks, and alteration omitted). "Under the equitable tolling doctrine, where a party 'remains in ignorance of [a wrong] without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party.'" In re United Ins. Mgmt., Inc., 14 F.3d at 1384 (quoting Lampf, Pleva, Lipkind,

11

<u>Prupis & Petigrow v. Gilbertson</u>, 501 U.S. 350 (1991)).

### 2. The Ninth Circuit applies equitable tolling without regard to a trustee's diligence in pursuing claims after discovery.

The Templetons contend that, based on equitable tolling, the adversary complaint filed in September 2014 was timely. Appellees contend that the Trustee was dilatory after the discovery of the fraudulent transfers, such that she should be denied the benefit of equitable tolling. We agree with the Templetons and hold that the bankruptcy court misapplied Ninth Circuit law.

In <u>Socop-Gonzalez v. Immigration & Naturalization Service</u>, 272 F.3d 1176 (9th Cir. 2001), the Ninth Circuit, sitting en banc, considered whether a limitations period was subject to equitable tolling. An immigrant seeking to challenge an order of deportation (initially on the basis of asylum) asked an Immigration and Naturalization Service ("INS") officer how to submit a petition to immigrate based on his recent marriage to an American citizen. <u>Id.</u> at 1181. The INS officer instructed the appellant to withdraw his asylum appeal and file an application for adjustment of status with the INS. Unfortunately, the information provided by the INS officer was incorrect. The Bureau of Immigration Appeals ("BIA") terminated his asylum appeal and returned the case to the immigration court, which made the deportation order immediately effective as of May 5, 1997. <u>Id.</u>

On July 7, 1997, the appellant received a letter from the INS, instructing him to report for deportation. This was the first time he was alerted to a problem in his attempt to adjust

12

his status. Shortly thereafter, while processing the appellant's application for adjustment of status, the INS informed the appellant that he was eligible to receive his employment authorization card. Concerned by the INS's conflicting posture, on August 11, the appellant moved to reopen his case and to reinstate the asylum appeal. The BIA denied the motion on the ground, inter alia, that the motion to reopen was untimely because it was not filed within ninety days of the BIA's May 5 deportation order. Id. at 1182.

On appeal, the appellant argued that the BIA should have equitably tolled the ninety-day limitations period between May 5 (the entry of the deportation order) and July 7 (the notice to report for deportation), because he did not know that the INS officer's erroneous advice had caused him to follow the wrong procedure. Id. at 1183. The Ninth Circuit agreed. It concluded that equitable tolling was applicable to the filing deadline for a motion to reopen. Id. at 1187-89. It then considered "whether, despite due diligence, [the appellant] was prevented during this period, by circumstances beyond his control . . . from discovering that his order of deportation had become effective . . . ." Id. at 1194. It held that "[b]etween May 5, 1997 and July 7, 1997, [the appellant] had no reason to believe that his deportation order had become effective. In fact, he had every reason to believe that he had followed the correct procedure for adjusting his status." Id. The court thus held that the period from May 5 through July 7 should not have counted toward the ninety-day period. Id.

The court noted that, at the time the appellant was put on

13

notice by the deportation notice, he still had twenty-seven days in which he could have filed a motion to reopen. Id. The court held that this was irrelevant. It overruled the Ninth Circuit panel decision in Santa Maria v. Pacific Bell, 202 F.3d 1170 (9th Cir. 2000), which stood for the proposition that "courts should not apply equitable tolling in situations where a plaintiff discovers the existence of a claim before the end of a limitations period and the court believes that the plaintiff could have been expected to bring a claim within the remainder of the limitations period." Socop-Gonzalez, 272 F.3d at 1194. The court stated that, "[i]n tolling statutes of limitations, courts have typically assumed that the event that 'tolls' the statute simply **stops the clock** until the occurrence of a later event that permits the statute to resume running." Id. at 1195 (emphasis in original). It held that the Santa Maria decision does away with "the relative certainty and uniformity with which a statutory period may be calculated and applied"; was explicitly rejected by the Supreme Court; and "trumps what is arguably Congress' intended policy objectives in setting forth a statute of limitations period – to permit plaintiffs to take a specified amount of time . . . to further investigate their claim and consider their options before deciding whether to file suit." Id. at 1195-96. It thus concluded by stating that,

> we reject the approach to tolling adopted in Santa Maria, and **we need not inquire whether [the appellant] could have filed his motion to reopen within the twenty-seven days remaining in the limitations period** after he received [notice of deportation]. . . . Instead, **we need only ask whether [the appellant] filed within the limitations period after tolling is taken into account.** [The appellant] had until ninety days after July 7 to file a motion to reopen, or until

14

October 5, 1997.

Id. at 1196 (emphases added).

The holding of Socop-Gonzalez is still good law in this circuit. See Mangum v. Action Collection Serv., Inc., 575 F.3d 935, 947 (9th Cir. 2009) (O'Scannlain, J., concurring). There is no reason to think that the Ninth Circuit would apply equitable tolling in a different fashion under § 546(a)(1).

Very recently, the Ninth Circuit again indicated that equitable tolling simply extends the statute of limitations period by the length of time the plaintiff could not discover the injury. In Gladstone, the court held that the trustee's avoidance action was subject to § 546(a)(1)(A). 2016 WL 142469 at *8. It quoted United Insurance Management for the proposition that, "where a party 'remains in ignorance of [a wrong] without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered . . . .'" Id. (quoting In re United Ins. Mgmt., Inc., 14 F.3d at 1384). The court did not inquire whether the trustee was thereafter diligent, but merely held that "the statute of limitations was tolled until the fraudulent transfers were revealed to the Trustee's attorney . . . ." Id. at *9. The court's language implies that a plaintiff would receive the benefit of the full statutory period after the discovery of the fraudulent transfer.

Appellees and the bankruptcy court relied heavily upon Taylor v. Hosseinpour-Esfahani (In re Hosseinpour-Esfahani), 198 B.R. 574 (9th Cir. BAP 1996), a pre-Socop-Gonzalez BAP decision that considered an issue identical to that posed in this appeal.

15

In that case, the "issue before the Panel [was] whether the bankruptcy court abused its discretion in refusing to apply the doctrine of equitable tolling when the trustee was dilatory **after** discovering the existence of a claim." In re Hosseinpour-Esfahani, 198 B.R. at 579 (emphasis in original). The panel held that "[d]espite the trustee's alleged diligence in discovering the alleged fraud before the statute of limitations lapsed, we cannot conclude that this obviates the need for the trustee to act diligently and in a timely manner once he has this knowledge." Id. (internal citations omitted); see also Gladstone v. Michaelis (In re QualityBuilt.com), Bkr. no. 09-12113-PB7, 2014 WL 5089040, at *3 (Bankr. S.D. Cal. Apr. 14, 2014) (determining that "the Trustee was indeed dilatory after discovering the facts underlying the Avoidance Claims, and that there [were] no extreme circumstances which warrant equitable tolling to save the Trustee from the time limitations").

Appellees urge us to ignore the Ninth Circuit's explicit ruling in Socop-Gonzalez in favor of our own earlier decision in Hossseinpour-Esfahani. We decline to do so. After Socop-Gonzalez, Hosseinpour-Esfahani is no longer good law. A court should not look at the trustee's post-discovery diligence when considering whether equitable tolling should be applied. If the trustee was diligent in discovering the claims, then he should receive the benefit of the full limitations period after discovery of the fraudulent transfers.

We note that Socop-Gonzalez's "stop-clock" rule is consistent with bankruptcy policy for several reasons.

First, the rule advocated by the Appellees would create

16

uncertainty about the length of the limitations period. An ad hoc standard eliminates the certainty and sense of repose that a statute of limitations is meant to provide. At oral argument, the Panel asked Appellees' counsel to state a standard of timeliness that bankruptcy courts could apply in lieu of the "stop clock" rule. Counsel had no answer.

Second, an unguided case-by-case standard would require parties to bear the expense of litigating a fact-intensive inquiry into a trustee's post discovery diligence. This would tend to increase the expense of bankruptcy cases, to the detriment of all creditors.

Third, Appellees' rule would encourage debtors to obstruct the trustee's investigation or to hide assets and documents. If debtors anticipate a reward for disobeying the trustee, they are more likely to attempt to run out the statute of limitations without cooperating. The fairer course is to allow the trustee the full statutory period after discovery of the cause of action.

Finally, the rule of Hosseinpour-Esfahani has an ironic and unjust consequence. For example, if the limitations period is two years, the plaintiff's suit is timely if filed within the two-year period, even if the plaintiff easily could have filed suit in less than two years. Under Hosseinpour-Esfahani, a plaintiff entitled to equitable tolling has to bear the additional burden of showing that the plaintiff filed suit as promptly as was reasonably possible. In this respect, a plaintiff entitled to equitable tolling is worse off than a plaintiff who is not. This is both ironic and unjust since equitable tolling is often available because the defendant

17

concealed the claim or is guilty of some other misconduct. Thus, the rule of <u>Hossseinpour-Esfahani</u> confers benefits on undeserving defendants.

The bankruptcy court also said that the Trustee "made a conscious decision" not to pursue the claims identified by the Templetons. This is irrelevant. Prior to the expiration of the limitations period (absent tolling), a plaintiff is perfectly free to change her mind about whether to file suit. The application of equitable tolling is not a reason to deprive a plaintiff of that privilege.

The bankruptcy court found that the Trustee acted diligently until she learned of the claims. The Templetons (acting on behalf of the estate) asserted those claims within two years thereafter. The bankruptcy erred in holding that the claims were untimely.[7]

**B.   The bankruptcy court's findings do not support the application of equitable estoppel.**

The Templetons urge the Panel to reverse on the alternate basis of equitable estoppel.

Ordinarily, we consider only arguments that the parties

---

[7]   The Templetons argue that the bankruptcy court erred by failing to grant them summary adjudication on the statute of limitations defense. However, the Templetons never noticed or filed a cross-motion for summary judgment and only raised this request in their opposition to the motions for summary judgment. Moreover, at the hearings on the motions for summary judgment, counsel for the Templetons conceded that they did not file any cross-motion, and the court was hesitant to grant relief without giving "the parties reasonable opportunity to be heard." The court did not rule on the supposed cross-motion, and we decline to do so for the first time on appeal.

first presented to the bankruptcy court. The Templetons barely mentioned the equitable estoppel theory in the bankruptcy court. But the Ninth Circuit, in the Socop-Gonzalez decision, held that a party who relied on equitable estoppel in the lower court can argue an equitable tolling theory on appeal, because "there is 'clearly some overlap' between equitable tolling and estoppel, and . . . the two can be difficult to distinguish." Socop-Gonzalez, 272 F.3d at 1185. This case involves the reverse situation; the Templetons relied almost entirely on equitable tolling in the bankruptcy court and want to argue equitable estoppel on appeal. Nevertheless, the considerations that motivated the Ninth Circuit in Socop-Gonzalez apply here. Thus, although the Templetons did not explicitly raise equitable estoppel in the bankruptcy court, we may consider that doctrine on appeal.

"Equitable estoppel focuses primarily on the actions taken by the defendant in preventing a plaintiff from filing suit . . . . Equitable estoppel may be invoked if the defendant takes active steps to prevent the plaintiff from suing in time, such as by misrepresenting or concealing facts necessary to the . . . claim." Coppinger-Martin v. Solis, 627 F.3d 745, 751 (9th Cir. 2010) (internal citations and quotation marks omitted). Equitable estoppel thus "focuses on the actions of the defendant." Socop-Gonzalez, 272 F.3d at 1184 (citation omitted). There must be "affirmative misconduct," which means a "deliberate lie" or "a pattern of false promises." Id. (citations omitted).

Equitable estoppel also requires that: "(1) the party to be estopped must know the facts; (2) the party to be estopped must

19

either intend that its conduct will be acted upon or act in a manner that the party asserting estoppel has a right to believe it is so intended; (3) the party asserting estoppel must be ignorant of the true facts; and (4) the party asserting estoppel must rely on the conduct to its injury." Alary Corp. v. Sims (In re Associated Vintage Grp., Inc.), 283 B.R. 549, 567 (9th Cir. BAP 2002) (citations omitted).

In the present case, there are some indications that equitable estoppel might apply. The Debtor must have known about the fraudulent transfers that were drawn from her bank account. The bankruptcy court highlighted "Debtor's egregious conduct, including but not limited to, the failure to schedule assets, false oaths in the schedules and in response to questions at creditors' meetings, the failure to turn over documents and cooperate with the trustee . . . ." Finally, the court found that the Trustee did not and could not have known of the fraudulent transfers and, thus, did not bring suit on those transfers.

The court did not, however, make comparable findings of misconduct against the Appellees other than the Debtor. It did not find that the Debtor's misconduct was attributable to the other Appellees. In the absence of such findings, we cannot say that the bankruptcy court erred in its failure to apply the equitable estoppel doctrine.

**C. The Panel declines to consider items not before the bankruptcy court and will not take judicial notice of the Templetons' supplemental documents.**

Finally, the Templetons urge us to take judicial notice of supplemental documents that were not before the bankruptcy court

20

during its consideration of the underlying summary judgment motions. We will not do so.

In the first place, the Templetons acknowledged at oral argument that they offered the additional documents only to show that the Trustee acted diligently after discovering the transfers. Because we have decided that the Trustee's post-discovery diligence is irrelevant, the supplemental documents are unnecessary.

In any event, except in rare cases where "'the interests of justice demand it,' an appellate court will not consider evidence not presented to the trial court[.]" Graves v. Myrvang (In re Myrvang), 232 F.3d 1116, 1119 n.1 (9th Cir. 2000) (quoting Dakota Indus., Inc. v. Dakota Sportswear, Inc., 988 F.2d 61, 63 (8th Cir. 1993); citing Kirshner v. Uniden Corp. of Am., 842 F.2d 1074, 1077 (9th Cir. 1988)). An appellate court is "concerned only with the record before the trial judge **when his decision was made**." Kirshner, 842 F.2d at 1077 (citation omitted) (emphasis in original).

In the present case, it is undisputed that the bankruptcy court did not consider the supplemental documents.[8] The Templetons have not presented the Panel with any extraordinary circumstances that would justify our consideration of the supplemental documents. Nor do they show "error or accident"

---

[8] Appellees also point out that the bankruptcy court struck Item 3 in the excerpts of record. We have considered this document to the extent necessary to understand the relevant factual background.

21

under Rule 8009.[9] We thus decline to take judicial notice of the supplemental documents.

**CONCLUSION**

For the reasons set forth above, we conclude that the bankruptcy court erroneously applied the doctrine of equitable tolling when it granted the summary judgment and dismissed the Templetons' remaining claims as untimely under § 546(a)(1)(A) because the Trustee was dilatory after discovery of the fraudulent transfers. For the reasons stated in our separate memorandum, we find no other error in the bankruptcy court's decisions. Accordingly, we AFFIRM IN PART and VACATE IN PART the bankruptcy court's order granting summary judgment; VACATE the order denying reconsideration; and REMAND for further proceedings consistent with this opinion and the accompanying memorandum.

---

[9] Rule 8009(e) states, in relevant part: "If anything material to either party is omitted from or misstated in the record by error or accident, the omission or misstatement may be corrected, and a supplemental record may be certified and transmitted . . . by the court where the appeal is pending."