**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| IN RE CHARLENE M. MILBY, *Debtor*, | Nos. 16-60022 16-60023 |
| JON A. MILBY; D&J TRUCKING COMPANY, a California corporation; SANDRA HOLDER MILBY, an individual; SANJON, INC., a California corporation; 5TH STREET CONDO, LLC, California Limited Liability Company; CHARLENE M. MILBY; CHARLENE'S TRANSPORTATION, INC., a California corporation, *Appellants/Cross-Appellees*, v. PATRICIA A. TEMPLETON, individuals on behalf of the Bankruptcy Estate of Debtor Charlene M. Milby, and derivatively on behalf of Charlene's Transportation, Inc.; G. CRESSWELL TEMPLETON, III, Bankruptcy Estate of Debtor Charlene M. Milby, and derivatively on behalf of Charlene's Transportation, Inc., *Appellees/Cross-Appellants.* | BAP No. 15-1180 OPINION |

Appeal from the Ninth Circuit
Bankruptcy Appellate Panel
Taylor, Faris, and Corbit, Bankruptcy Judges, Presiding

Argued and Submitted September 1, 2017
Pasadena, California

Filed November 21, 2017

Before: Kim McLane Wardlaw and Jay S. Bybee, Circuit
Judges, and Harvey Bartle III,[*] District Judge.

Opinion by Judge Bybee

**SUMMARY**[**]

**Bankruptcy**

The panel affirmed the judgment of the Bankruptcy
Appellate Panel, which (1) reversed the bankruptcy court's
dismissal as time-barred of a bankruptcy estate's claims
seeking avoidance of fraudulent transfers and (2) affirmed the
bankruptcy court's dismissal of other claims based on
transfers not made by the debtor.

[*] The Honorable Harvey Bartle III, United States District Judge for
the Eastern District of Pennsylvania, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has
been prepared by court staff for the convenience of the reader.

Regarding the time bar, the bankruptcy court held that the bankruptcy estate's delay in filing after discovering the transfers precluded equitable tolling of the statute of limitations. The BAP reversed, holding that such post-discovery delay is irrelevant to whether equitable tolling applies. The panel wrote that neither court correctly applied the law on equitable tolling. Under the correct standard, post-discovery delay does not preclude equitable tolling but is still relevant to assessing a party's overall diligence. The panel affirmed the judgment of the BAP because the estate's overall diligence, combined with extraordinary circumstances preventing earlier discovery of the transfers, warranted equitable tolling.

The panel affirmed, for the same reasons stated in the BAP's opinion, the BAP's affirmance of the bankruptcy court's dismissal of claims based on transfers that were made by individuals and entities other than the debtor and therefore could not serve as predicates for a claim under 11 U.S.C. § 544(b). The panel remanded the case to the bankruptcy court.

## COUNSEL

Karen L. Grant (argued), Law Offices of Karen L. Grant, Santa Barbara, California; Janet K. McGinnis, Law Office of Janet K. McGinnis, Santa Barbara, California; for Appellants/Cross-Appellees.

Daniel Joseph McCarthy (argued), Hill Farrer & Burrill LLP, Los Angeles, California, for Appellees/Cross-Appellants.

## OPINION

BYBEE, Circuit Judge:

The bankruptcy estate of Debtor Charlene Milby discovered allegedly fraudulent transfers days before the statute of limitations on avoidance claims was set to expire. This action was not filed until almost a year later. The bankruptcy court dismissed the action as time barred and held that the estate's delay in filing after discovering the transfers precluded equitable tolling. The Bankruptcy Appellate Panel ("BAP") reversed, holding that such *post*-discovery delay is irrelevant to whether equitable tolling applies.

Neither court correctly applied our law on equitable tolling. Under *Gibbs v. Legrand*, post-discovery delay does not preclude equitable tolling but is still relevant to assessing a party's "overall diligence." 767 F.3d 879, 891–93 (9th Cir. 2014). We affirm the judgment of the BAP because, here, the estate's overall diligence, combined with the extraordinary circumstances preventing earlier discovery of the subject transfers, warrants equitable tolling.

I

Charlene Milby petitioned for Chapter 7 bankruptcy on September 22, 2011. Under 11 U.S.C. § 546(a)(1), the bankruptcy estate had two years, or until September 22, 2013, to file any avoidance actions.[1] Between September 5 and 18,

---

[1] The Templetons argue a "discovery" rule should apply, such that the limitations period began running only when the estate discovered the subject transfers in September 2013. This is not only contrary to what they argued before the district court, but also contradicts the express

2013, with just days remaining on the two-year limitations period, creditors Patricia and G. Cresswell Templeton informed the bankruptcy trustee of allegedly fraudulent transfers the estate might seek to avoid. The trustee chose not to act on that information, however, concluding that the cost of litigation would likely outweigh any potential benefit. Thus, on September 19, 2013, the trustee filed a complaint to avoid certain transfers but not those the Templetons had identified.

The bankruptcy court approved a settlement of the trustee's action in August 2014. While the court was still considering the settlement, the Templetons approached the trustee about being appointed to challenge the transfers they had previously brought to her attention. The trustee agreed, and on September 16, 2014, the court approved the Templetons' appointment to pursue claims on behalf of the estate or derivatively on behalf of Charlene's company, Charlene's Transportation, Inc. ("CTI"). The next day, September 17, 2014, the Templetons filed this avoidance action on behalf of the estate and also, they contend, derivatively on behalf of CTI.

The Templetons' complaint challenged transfers from bank accounts allegedly owned by Defendants Charlene Milby; her father, Jon A. Milby; her step-mother, Sandra Holder Milby; and various companies. The complaint asserted four counts: (1) actual fraud under 11 U.S.C. § 544(b) and Cal. Civil Code § 3439.04(a)(1); (2) constructive fraud under 11 U.S.C. § 544(b) and Cal. Civil

language of § 546(a)(1). *See* 11 U.S.C. § 546(a)(1) (requiring avoidance actions to be brought within two years "after the entry of the order for relief").

Code §§ 3439.04(a)(2) and 3439.05; (3) aiding and abetting fraud; and (4) unjust enrichment. The Milby Defendants moved for summary judgment, arguing that the first three counts were barred by the two-year limitations period on avoidance actions. The Templetons conceded that the limitations period would normally have expired on September 22, 2013—nearly a year before the action was filed—but argued that equitable tolling applied given Charlene's misconduct in failing to disclose the subject transfers or to cooperate with the bankruptcy trustee.

In deciding summary judgment, the bankruptcy court first analyzed whether the subject transfers were "an interest of the debtor in property" as required to state a claim under § 544(b). *In re Milby*, No. 9:11-BK-14487-PC, 2015 WL 967714, at \*10 (Bankr. C.D. Cal. Mar. 2, 2015). The court held that only the transfers alleged in paragraph 30 of the Templetons' complaint so qualified. *Id.* at \*12. It therefore dismissed without prejudice any claim based on the remaining transfers alleged in paragraphs 31–35 for failure to state a claim and granted the Templetons leave to amend to challenge those transfers under a different theory. *Id.*

The bankruptcy court then considered whether the claims based on the paragraph 30 transfers were timely. *Id.* It found that equitable tolling did not apply because the estate had the opportunity to assert claims based on the subject transfers before the limitations period would normally have expired but did not do so. *Id.* at \*16. Thus, the court held that the Templetons' first three claims based on the paragraph 30 transfers were untimely and dismissed those claims with prejudice. *Id.* at \*17. It also dismissed the unjust enrichment claim for failure to state a claim. *Id.* The Templetons filed

a notice that they would not amend their complaint, thereby allowing a final judgment to issue.

On appeal, the BAP vacated in part the judgment for Defendants. *In re Milby*, 545 B.R. 613, 625 (B.A.P. 9th Cir. 2016). In a published opinion, the BAP held that the bankruptcy court erred in considering the estate's diligence after discovering the subject transfers. *Id.* It ruled that equitable tolling could apply and remanded for further proceedings. *Id.* And in a separate, unpublished opinion, the BAP affirmed the bankruptcy court's dismissal of any claims based on the paragraph 31–35 transfers. *In re Milby*, No. AP 14-01132-PC, 2016 WL 778164, at *4 (B.A.P. 9th Cir. Feb. 24, 2016). Defendants appealed the BAP's decision respecting equitable tolling, and the Templetons cross-appealed the decision affirming dismissal of their claims based on the paragraph 31–35 transfers.[2]

## II

The doctrine of equitable tolling is "read into every federal statute of limitation." *Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946). Indeed, we have previously applied equitable tolling to § 546(a)(1). *Gladstone v. U.S. Bancorp*, 811 F.3d 1133, 1143 (9th Cir. 2016). "A litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Gibbs*, 767 F.3d at 884–85 (quotation marks omitted).

---

[2] We have jurisdiction pursuant to 28 U.S.C. § 158(d) and review legal conclusions of the BAP de novo. *In re Jones*, 657 F.3d 921, 924 (9th Cir. 2011).

The bankruptcy court had no difficulty finding that the second element of equitable tolling was met here. The court described at length the extraordinary circumstances preventing the estate from initially filing the claims at issue, referring for example to "the Debtor's egregious conduct, including . . . the failure to schedule assets, false oaths in the schedules and in response to questions at creditors' meetings, and failure to turn over documents and cooperate with the trustee."[3] *Milby*, 2015 WL 967714 at *13. The court also noted that there was "no significantly probative evidence in the record that [the trustee] discovered, or could have discovered, the Subject Transfers earlier than September 18, 2013." *Id.* at *15. We agree with the bankruptcy court that the Templetons successfully established the second element of equitable tolling. *See Gladstone*, 811 F.3d at 1143 (applying equitable tolling where debtor concealed transactions).

The principal issue is thus whether the Templetons also established diligence, the first element of equitable tolling. Although the bankruptcy court found the trustee "was diligent in her administration of the estate" up to the time she discovered the subject transfers, it nevertheless declined to apply equitable tolling because no "exceptional circumstances existed *after* discovery of the Subject Transfers" to prevent timely filing. *Milby*, 2015 WL 967714 at *16 (emphasis added). The BAP, in turn, reversed on the ground that "[a] court should not look at the trustee's post-discovery diligence when considering whether equitable tolling should be applied." *Milby*, 545 B.R. at 622.

---

[3] The bankruptcy court ultimately denied Milby's discharge as a discovery sanction.

Neither the bankruptcy court nor the BAP correctly applied our law on equitable tolling. The bankruptcy court erred insofar as it held that equitable tolling is inappropriate any time a litigant has the opportunity to file before a limitations period would normally expire but does not do so. In other words, the bankruptcy court erred insofar as it held that failing to file a complaint after extraordinary circumstances cease but before the limitations period would normally expire is dispositive of whether equitable tolling applies. That rule is too narrow.

The BAP, for its part, erred in holding that post-discovery diligence is never relevant to whether equitable tolling applies. That rule is too broad. As we explained in *Gibbs*, "[d]iligence *after* an extraordinary circumstance is lifted may be illuminating as to overall diligence, but is not alone determinative." 767 F.3d at 892. It is "one factor in a broader diligence assessment." *Id.* That said, we give diligence *before* the extraordinary circumstance ends more weight than diligence afterward. *Id.* (noting that "diligence after the fact is less likely to be probative of the question of whether the extraordinary circumstance caused the late filing," such that "diligence during the existence of an extraordinary circumstance is the key consideration").

It appears that the BAP's confusion stemmed from conflating diligence considered as an element of equitable tolling with the "stop-clock" rule we adopted in *Socop-Gonzalez v. I.N.S.*, 272 F.3d 1176 (9th Cir. 2001). In *Socop*, Oscar Socop-Gonzalez married a U.S. citizen while his request for asylum was pending. 272 F.3d at 1181. He asked an officer of the Immigration and Naturalization Service how he should proceed in light of his marriage and was erroneously advised to withdraw his request for asylum. *Id.*

By doing so, he unwittingly triggered his own deportation—which he learned of only twenty-seven days before the ninety-day period to reopen proceedings was set to expire. *Id.* He sought legal advice and eventually moved to reopen proceedings, but the Board of Immigration Appeals refused to reopen his case because more than ninety days had elapsed. *Id.* On petition for review, we applied equitable tolling and held that "the event that 'tolls' the statute simply *stops the clock* until the occurrence of a later event that permits the statute to resume running." *Id.* at 1195. We therefore concluded that Socop was entitled to the full ninety days to move to reopen proceedings counting from the date he learned of his deportation. *Id.*

*Socop*'s stop-clock rule governs the computation of time remaining on a statute of limitations when equitable tolling applies. It does not, however, preclude considering post-discovery diligence in deciding whether equitable tolling applies in the first place. In *Gibbs*, we noted an apparent "tension" between the stop-clock rule and examining post-discovery diligence but explained how that tension is resolved:

> We note some tension between examining a petitioner's diligence *after* the lifting of an obstacle to timely filing, and the stop-clock rule established by an en banc panel of this Court in *Socop-Gonzalez*. *Socop-Gonzalez* rejected the approach to equitable tolling wherein courts consider whether a claimant should have been expected to file his lawsuit within the amount of time left in the statute of limitations, after an extraordinary circumstance barring filing was lifted.

Instead, "the event that 'tolls' the statute simply *stops the clock* until the occurrence of a later event that permits the statute to resume running."

. . . . *Socop-Gonzalez*'s "stop-clock" holding remains the law in our circuit and applies here. That rule prohibits courts from constraining litigants to a judicially imposed filing window, and warns against imposing additional diligence requirements on recipients of equitable tolling.

*Courts may, however, consider a petitioner's diligence, after an extraordinary circumstance has been lifted, as one factor in a broader diligence assessment.*

767 F.3d at 891–92 (final emphasis added and citations omitted); *see also Luna v. Kernan*, 784 F.3d 640, 651–52 (9th Cir. 2015) ("[U]nder current circuit law, we must apply both the diligence-through-filing requirement imposed by *Spitsyn* and the stop-clock approach adopted in *Gibbs*."); *Spitsyn v. Moore*, 345 F.3d 796, 801 (9th Cir. 2003) (remanding for consideration of diligence after an extraordinary circumstance in deciding whether to apply equitable tolling).

Applying *Gibbs* to the case before us, we hold that the estate satisfied the diligence element of equitable tolling. The bankruptcy court found that the trustee was diligent during the time the subject transfers were concealed, and it is "diligence *during* the existence of an extraordinary circumstance [that] is the key consideration." *Gibbs*, 767 F.3d at 892. Less than a week remained on the statute of

limitations when the estate discovered the subject transfers in September 2013, and it would have been unreasonable to require the estate to file in that time. The trustee brought an avoidance action challenging other unconcealed transfers, and she settled that action in August 2014. Once it became apparent the trustee would not pursue the subject transfers, the Templetons asked to be appointed to do so. The bankruptcy court appointed them on September 16, 2014, and they filed their complaint the very next day.[4] Although nearly a year had elapsed between discovery of the subject transfers and filing, this does not, under the circumstances, undercut the estate's overall diligence. Equitable tolling applies, and the estate gets the benefit of the stop-clock rule. The action was timely filed.

III

Finally, we turn to the Templetons' cross-appeal. As noted above, the bankruptcy court found that the transfers alleged in paragraphs 31–35 of the Templetons' complaint were made by individuals and entities other than the Debtor and therefore could not serve as predicates for a § 544(b) claim. It also found that the Templetons had failed to state a claim to avoid the paragraph 31–35 transfers under any other theory. It therefore dismissed without prejudice any claim based on the paragraph 31–35 transfers, and the BAP affirmed.

---

[4] Prior to their appointment—which followed a court-approved settlement between Charlene and the trustee—the Templetons did not have the power to pursue the subject transfers. *See* 11 U.S.C. § 544(b) (granting to the bankruptcy trustee the power to "avoid any transfer of an interest of the debtor in property").

We affirm the BAP's judgment in this regard for the same reasons stated in its opinion. In brief, § 544(b) provides that a bankruptcy trustee "may avoid any transfer *of an interest of the debtor in property* . . . that is voidable under applicable law by a creditor holding an unsecured claim." 11 U.S.C. § 544(b)(1) (emphasis added). The transfers alleged in paragraphs 31–35 were transfers from bank accounts in the names of non-Debtor Defendants and therefore could not support a § 544(b) claim. Although the Templetons argued that their complaint also adequately pled claims under other theories, both the bankruptcy court and the BAP correctly held that it did not. The bankruptcy court granted the Templetons leave to amend to plead their alternate theories, but they chose not to do so.

Accordingly, we **AFFIRM** the judgment of the BAP and **REMAND** to the bankruptcy court for further proceedings consistent with this opinion.