In the

# United States Court of Appeals
### For the Seventh Circuit

No. 16-1334

IN RE:
LAURA A. WIERZBICKI,

*Debtor,*

BRENDA L. ZEDDUN, Trustee in Bankruptcy,

*Plaintiff-Appellee,*

*v.*

GREG GRISWOLD,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Western District of Wisconsin
No. 14-cv-718-jdp — **James D. Peterson**, *Judge.*

SUBMITTED JULY 22, 2016* — DECIDED JULY 27, 2016

---

* After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and the record. See Fed. R. App. P. 34(a)(2)(C).

Before WOOD, *Chief Judge,* and ROVNER and HAMILTON, *Circuit Judges.*

PER CURIAM. This appeal illustrates how courts should determine whether a debtor in bankruptcy received reasonably equivalent value in deciding whether a pre-bankruptcy transfer of the debtor's property amounted to a fraudulent transfer under 11 U.S.C. § 548(a)(1)(B). The bankruptcy court found that a transfer of a farm in this case was fraudulent and avoided the transfer. The district court affirmed, and so do we.

I.   *Factual and Procedural Background*

Debtor Laura Wierzbicki owned a 40-acre farm in Cross Plains, Wisconsin, where she lived for a time with her three minor children and their father, appellant Greg Griswold. In March 2012 Wierzbicki gave Griswold a quitclaim deed to the farm. Fourteen months later she filed for Chapter 7 bankruptcy. The bankruptcy trustee brought an adversary proceeding in bankruptcy court against Griswold to avoid the transfer as fraudulent. The trustee alleged that Wierzbicki was insolvent at the time of the transfer and that she had not received reasonably equivalent value in exchange for the property. See 11 U.S.C. § 548(a)(1)(B).

After a trial Bankruptcy Judge Martin avoided the transfer, concluding that Griswold had exchanged nothing of value for the farm. Whether a debtor has received reasonably equivalent value in an exchange of property is a question of fact, and appellate review of such a finding is deferential, asking whether the finding of fact is clearly erroneous. See *In re Image Worldwide, Ltd.*, 139 F.3d 574, 576 (7th Cir. 1998).

Wierzbicki and Griswold lived and worked together on the farm, where they also operated a business salvaging boats. Sometime before 2009 their personal and business relationships soured. Griswold sued Wierzbicki in state court for unjust enrichment and collateral estoppel. Wierzbicki counterclaimed for slander of title. In 2011 a state trial court sided with Wierzbicki, finding that Griswold "does not have, and has never had, any interest in or title to" the farm. Griswold appealed that decision. He also filed a second appeal challenging the trial judge's refusal to recuse himself, and a separate petition in the appellate court demanding that the State of Wisconsin be compelled to bring criminal charges against Wierzbicki for false swearing.

In 2012 the state appellate court dismissed Griswold's principal appeal and rejected his demand for criminal charges. Wierzbicki apparently wanted an end to the litigation, and she accepted Griswold's promise to drop the rest of the litigation if she gave up the farm. Griswold set out the deal in a document providing that Wierzbicki would give him one dollar and the quitclaim deed. In exchange, Wierzbicki would receive Griswold's promise to abandon the litigation (at that point, just the recusal appeal and his petitions for review of his appellate losses in the Wisconsin Supreme Court) and to assume about $149,000 in liabilities secured by the property. The document also said that the deal would "bring closure" to Wierzbicki's potential liability arising from a zoning dispute with the county that "continues to be directly adversely affecting their children's security and welfare." Both Wierzbicki and Griswold signed the document. Wierzbicki then executed the quitclaim deed, which Griswold recorded with the register of deeds.

The trustee alleged in her adversary complaint that the transfer of the farm was constructively fraudulent and thus avoidable because (a) it had occurred within two years of the bankruptcy filing, (b) Wierzbicki was insolvent at the time of the transfer, and (c) she did not receive "a reasonably equivalent value in exchange for" the property. 11 U.S.C. § 548(a)(1)(B). The parties agree that the transfer fell within the two-year window and that Wierzbicki was insolvent at the time. The dispute here is about reasonably equivalent value. Griswold has argued that his promises to Wierzbicki provided reasonably equivalent value and that the farm's value to Wierzbicki at the time of the transfer was essentially nothing because of various encumbrances.

After a trial at which both Griswold and Wierzbicki testified, the bankruptcy court concluded that the transfer was fraudulent. The court found that, at the time of the transfer, the fair market value of the farm was $300,000. The property was encumbered by three mortgages, two judgment liens, and outstanding real estate taxes, but the court found that Wierzbicki still had equity of approximately $151,000 at the time of the transfer to Griswold. The bankruptcy court further found that Griswold's promise to cease his "meritless appeals" in exchange for that interest had no material value. The bankruptcy court thus avoided the transfer.

II. *Analysis*

We have jurisdiction to hear Griswold's appeal from the bankruptcy court's order avoiding the transfer of the property under 28 U.S.C. § 158(d). See *Peterson v. Somers Dublin Ltd.*, 729 F.3d 741, 747 (7th Cir. 2013) (explaining that Article III authorizes bankruptcy judges to enter final orders in avoidance actions); *In re FBN Food Servs., Inc.*, 82 F.3d 1387, 1392 (7th Cir.

1996) (explaining that courts of appeals may hear appeals from final decisions in bankruptcy actions, including avoidance actions).

We review the bankruptcy court's conclusions of law *de novo* and its findings of fact for clear error, meaning that we will uphold its findings of fact unless we are "left with the definite and firm conviction that a mistake has been committed." *Unsecured Creditors Comm. of Sparrer Sausage Co. v. Jason's Food, Inc.*, No. 15-2356, — F.3d —, —, 2016 WL 3213096, at *2 (7th Cir. June 10, 2016), quoting *Kovacs v. United States*, 614 F.3d 666, 672 (7th Cir. 2010).

In determining whether a debtor received "reasonably equivalent value," courts consider all the circumstances of the transfer, including "the fair market value of what was transferred and received, whether the transaction took place at arm's length, and the good faith of the transferee." *In re Smith*, 811 F.3d 228, 240 (7th Cir. 2016); see *Barber v. Golden Seed Co.*, 129 F.3d 382, 387 (7th Cir. 1997). The transaction between Wierzbicki and Griswold was not at arm's length, and Wierzbicki's testimony that "the main reason" she agreed to give Griswold the farm was to "stop the litigation"—which was frivolous—suggests that Griswold was not negotiating in good faith. In light of these standards, we consider Griswold's specific arguments.

Griswold first argues that the bankruptcy court overvalued Wierzbicki's interest in the property at the time of the transfer by not taking into account a *lis pendens* that he had filed in relation to the property. Griswold misunderstands the significance of a *lis pendens*. Under Wisconsin law a *lis pendens* simply alerts third parties to judicial proceedings involving real estate. It does not create an encumbrance on the property.

See Wis. Stat. § 840.10; *Trade Well Int'l v. United Cent. Bank*, 778 F.3d 620, 624 (7th Cir. 2015); *Kensington Dev. Corp. v. Israel*, 419 N.W.2d 241, 245 (Wis. 1988).

Griswold argues next that two separate $75,000 homestead exemptions that he says would have been available to him and Wierzbicki should have brought her equity in the property to zero. This argument has no merit at all. State-created homestead exemptions, which are incorporated into the Bankruptcy Code by 11 U.S.C. § 522(b), facilitate fresh starts for debtors by allowing them to shield from creditors specific assets or amounts that otherwise would be part of the bankruptcy estate. See 4 Collier on Bankruptcy ¶ 522.01 (Alan N. Resnick & Henry J. Sommers eds., 16th ed.) ("A fundamental component of an individual debtor's fresh start in bankruptcy is the debtor's ability to set aside certain property as exempt from the claims of creditors."). Griswold, however, is not the debtor in this bankruptcy action, so he is not entitled to a homestead exemption from Wierzbicki's creditors. See *Gladstone v. U.S. Bank Corp.*, 811 F.3d 1133, 1142 (9th Cir. 2016) (explaining that homestead exemption applies only for benefit of debtor; transferee cannot assert it against creditors in avoidance action); *In re Noblit*, 72 F.3d 757, 758 (9th Cir. 1995) (same). And the availability of a homestead exemption to Wierzbicki has nothing to do with the fair market value of the farm when she transferred it.

Griswold next argues that the bankruptcy court erred by undervaluing his promise to drop his appeals in state court; that his promises to assume liability for the mortgages and other liens on the farm provided value; and that the court also failed to consider the additional benefit to Wierzbicki in limiting her exposure to liability in a county zoning dispute and

ensuring that their children could remain in their home. All of these arguments fail, as well.

What Wierzbicki received for the farm was not worth anywhere close to her $151,000 interest. Griswold's promise to assume liability for the mortgages and other liens on the property was worth no more than the amount of those encumbrances—roughly $149,000 or half the property's value. Those amounts were already taken into account when the court estimated that Wierzbicki's equity was about $151,000.

The bankruptcy court also did not err by finding that Griswold's promise to drop his state-court appeals was essentially worthless. When Wierzbicki gave Griswold the quitclaim deed, the Wisconsin Court of Appeals had already dismissed two of his three cases—his appeal of the trial court's judgment in favor of Wierzbicki and his petition demanding that she face criminal charges. All that remained was his appeal of the trial judge's refusal to recuse himself and his petitions for discretionary review by the state supreme court.

The bankruptcy court did not err as a matter of fact that Griswold's appeals had only nuisance value, obviously far below the value of Wierzbicki's equity in the farm. Putting aside the slim chance that Griswold would prevail in those matters, there was an even more fundamental problem with Griswold's theory of value. The stakes of the state-court litigation had been ownership of the farm. The deal was to end the litigation. According to Griswold's theory of the value he supposedly provided, Wierzbicki *gave up the farm* to eliminate the risk of *losing the farm*. The only real value to Wierzbicki was saving the cost of defending against the frivolous remains of Griswold's litigation, but as the bankruptcy court found, that

cost would have been minimal compared to her $151,000 interest in the farm.

As noted, the bankruptcy court's judgment about reasonably equivalent value is a question of fact. Valuing real estate and settlements of nuisance litigation is not an exact science. We have no trouble affirming the bankruptcy court's judgment in this case since Wierzbicki gave up a $300,000 farm in which she had $151,000 equity in exchange for very little value. See *Smith*, 811 F.3d at 238 (concluding that purchase price between 3.8% and 8.8% of fair market value was not reasonably equivalent to value of property); *In re Lindell*, 334 B.R. 249, 255–56 (Bankr. D. Minn. 2005) (concluding that arm's-length sale of promissory notes valued at $130,000 for $50,000—or for 38.5% of notes' value—was not reasonably equivalent value under § 548(a)(1)(B)(i) where all payments had been made on notes in six months prior to sale); *In re McCook Metals, LLC*, 319 B.R. 570, 589–90 (Bankr. N.D. Ill. 2005) (concluding that debtor-company that transferred right to purchase certain manufacturing equipment—a right valued at $11.1 million—to another company controlled by same individual in exchange for note worth $7.8 million did not receive reasonably equivalent value). Considering the totality of the circumstances, the bankruptcy court's finding that Wierzbicki did not receive reasonably equivalent value was exactly right. It certainly was not clearly erroneous.

The bankruptcy court did not consider as part of the value received from Griswold two purported benefits to Wierzbicki listed in the opening recitals of the document they signed: "bringing closure" to her zoning dispute with the county and assurance that the couple's children would "continue to enjoy

the security provided them from residing at their farm homestead." The district court addressed these purported benefits and found they were not reasonably equivalent to the value of the farm. As for the zoning litigation, Griswold did not promise to assume liability for the cost or consequences of the zoning litigation. In fact, the district court found, Wierzbicki had been fined $500 for a zoning violation even after she transferred the property to Griswold. Griswold testified that he had paid $32,000 to remove boats from the farm to comply with zoning regulations, but the district court correctly recognized that this amount was not reasonably equivalent to the value of the farm itself.

The district court also found that the benefit of avoiding further family conflict was too "nebulous" to "support a finding of reasonable equivalence" in the bankruptcy context, where a transfer would put an insolvent debtor's valuable property beyond the reach of creditors. See *In re Hinsley*, 201 F.3d 638, 643 (5th Cir. 2000) (explaining that under Texas Uniform Fraudulent Transfer Act intangible, non-economic benefits, such as preservation of marriage, did not constitute reasonably equivalent value); *Image Worldwide*, 139 F.3d at 577 (explaining that UFTA took phrase "reasonably equivalent value" from 11 U.S.C. § 548(a)(2)); *In re Bargfrede*, 117 F.3d 1078, 1080 (8th Cir. 1997) (concluding that "non-economic benefits in the form of a release of a possible burden on the marital relationship and the preservation of the family relationship" are "sufficiently analogous to other intangible, psychological benefits" that they do not constitute reasonably equivalent value under 11 U.S.C. § 548); *In re Treadwell*, 699 F.2d 1050, 1051 (11th Cir. 1983) (concluding that love and affection do not constitute "reasonably equivalent value" under § 548). As cold and unsentimental as that rule might seem, it

is easier to understand from the perspective of creditors, most of whom would probably be unwilling to volunteer to provide a financial subsidy to enhance the insolvent debtor's family relationships by allowing the debtor to put valuable property beyond their reach.

AFFIRMED.