**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted February 21, 2017[*]
Decided March 6, 2017

**Before**

DIANE P. WOOD, *Chief Judge*

RICHARD A. POSNER, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 15-3794

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> *Plaintiff-Appellee*, | Appeal from the United States District Court for the Central District of Illinois. |
| *v.* | No. 06-30073-001 |
| PAUL KINCAID, <br> *Defendant*. | Richard Mills, <br> *Judge*. |

Appeal of:

STEVEN R. COLLINS,
    *Third-Party Respondent.*

Steven Collins challenges the government's effort to collect from him part of the restitution debt owed by another man, Paul Kincaid. After Kincaid was convicted of possession and production of child pornography, *see* 18 U.S.C. §§ 2251, 2252A(a)(5)(B),

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. *See* Fed. R. App. P. 34(a)(2)(C).

the district court sentenced him to 360 months in prison and ordered him to pay $60,000 in restitution to cover the cost of therapy for one of his victims. We affirmed Kincaid's conviction and sentence. See *United States v. Kincaid*, 571 F.3d 648 (7th Cir. 2009). In an effort to collect that debt, the government initiated proceedings to discover the assets of Collins, with whom Kincaid had long co-owned a personal residence and operated a number of businesses. The district court ultimately granted the government's motion and ordered Collins to turn over $23,019, representing assets that the court concluded actually belonged to Kincaid. We find, however, that the district court erred by resolving multiple factual disputes without holding an evidentiary hearing. We vacate the court's turnover order and remand for further proceedings.

After Kincaid's conviction, the government began post-judgment proceedings in the existing criminal case to discover assets that could be used to satisfy the restitution debt. Electing to proceed under state collection procedures, see 18 U.S.C. § 3613(a), (f); *United States v. Sheth*, 759 F.3d 711, 713 (7th Cir. 2014), the government served Collins with a citation to discover assets. See 735 ILCS § 5/2-1402(a). The citation informed him of Kincaid's restitution order and asked him to produce documents related to the house the two men shared, along with any other real or personal property "that came from Paul Kincaid since January 1, 2004." This initiated proceedings through which the government sought to compel Collins to turn over any assets in his possession that actually belonged to Kincaid. See 735 ILCS § 5/2-1402(a)–(c); Ill. S. Ct. R. 277(b); *Sheth*, 759 F.3d at 713; *Dexia Crédit Local v. Rogan*, 629 F.3d 612, 622 (7th Cir. 2010).

A government lawyer twice questioned Collins—in a courtroom but without the judge, who apparently was working on other matters in chambers—about the residence and businesses he co-owned with Kincaid. During these sessions, Collins was not allowed to present evidence. The government also took depositions of both Collins and Kincaid. Through these procedures the government learned that Collins and Kincaid had lived together since 1974 and had bought a house together in Illinois in 1979. When asked about the form of ownership, Collins testified that "title was in joint tenancy with full right of survivorship," but that because Collins had provided the down payment and would renovate the house himself, they had agreed at the time of purchase that Collins really had an 80% interest in the house and Kincaid a 20% interest. In 1995 Kincaid sold his interest in the property to Collins as repayment for $15,000 Collins had paid to Kincaid's attorneys and ex-wife after she sued him for unpaid child support. Kincaid conveyed his interest to Collins through a quitclaim deed, but it was never recorded. In 2006, a week after his arrest, Kincaid executed another quitclaim deed conveying whatever interest he had in the home to Collins for one dollar. That deed was recorded.

Shortly thereafter Collins gave Kincaid's defense attorneys a second mortgage to secure a $40,000 retainer. Collins then refinanced the house to pay off the principal mortgage and to raise the $40,000 owed to Kincaid's defense team. As part of that process, the home was independently appraised at $125,000.

The government then moved the district court to order Collins to turn over $23,019. See 28 U.S.C. §§ 3306(a)(3), 3307(b) (allowing government to collect from transferee the value of a fraudulently transferred property). The government argued that Kincaid's execution and delivery of a quitclaim deed to Collins a week after his arrest was a fraudulent transfer under the Federal Debt Collection Procedure Act. See 28 U.S.C. § 3304(b); *United States v. Resnick*, 594 F.3d 562, 565 (7th Cir. 2010). Under the FDCPA, a fraudulent transfer is one made "without receiving a reasonably equivalent value in exchange" when the transferor "intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due." 28 U.S.C. § 3304(b)(1)(B)(ii); see *Resnick*, 594 F.3d at 567. The government contended that the 1995 quitclaim deed was ineffective against creditors because it had not been recorded. See 765 ILCS 5/30; *Farmers State Bank v. Neese*, 665 N.E.2d 534, 538 (Ill. App. 1996) (holding that unrecorded deeds are void against subsequent creditors, including the government as holder of a tax lien); see also *United States v. Kollintzas*, 501 F.3d 796, 802 (7th Cir. 2007) (explaining that state law determines what rights a defendant in a criminal case has in property the government seeks to reach and that liens for restitution are treated like tax liens). Therefore, the government asserted, Kincaid still owned an interest in the house when he executed the 2006 quitclaim deed. That interest, the government insisted, was 50%.[1] A 50% interest in a home appraised at $125,000 appraisal would be $62,500, the government continued, and thus the $40,000 paid by Collins to Kincaid's defense attorneys fell short of the reasonably equivalent value of Kincaid's purported interest.

---

[1] The basis for the 50% assumption is not clear. The government did not produce the original deed to the house and though Collins—who is not a lawyer—characterized the ownership arrangement as a "joint tenancy," both he and Kincaid testified that when they bought the house Kincaid had only a 20% interest. Illinois does not recognize a joint tenancy with unequal interests. See 15 Ill. Prac., Real Estate § 9:85 (3d ed. 2016) (unequal interests cannot be held in joint tenancy); 13 Ill. Law and Prac. Conveyances § 131 (2017) (grantees will not take a joint tenancy where one cannot be created in the manner attempted); *Dolley v. Powers*, 89 N.E.2d 412, 414–15 (Ill. 1949) (same); *Porter v. Porter*, 45 N.E.2d 635, 637 (Ill. 1942) (deed purporting to convey estate in joint tenancy creates only tenancy in common when one of the essential unities is lacking). Since Collins's evidence about the ownership split is uncontradicted, we are not convinced that Kincaid's interest could have been 50%.

The government demanded the difference from Collins—$22,500—plus the $519 that was in the men's joint checking account when Kincaid was charged in 2006.

In response Collins disputed many of the government's assertions. In affidavits both Collins and Kincaid swore that Collins had maintained sole ownership of the home since 1995, when Kincaid executed the unrecorded quitclaim deed, a copy of which Collins submitted to the district court. The two men emphasized that Collins had provided the down payment and restored the house himself, and that Kincaid had not contributed anything toward the home. Collins also submitted a 1999 document titled "Property Equity Declaration," signed by both Collins and Kincaid, which purported to give Collins "100% equity interest" in the home. Collins explained that the 2006 quitclaim was just a redundant statement of rights, necessary because he had never recorded the earlier deed. In the alternative, Collins argued that, even if Kincaid did have a 50% interest in the home at the time of the 2006 transfer, he received reasonably equivalent value for that interest because the county's tax assessment for that year valued the home at $83,655. Thus, Collins argued, the $40,000 paid to Kincaid's defense attorneys, along with over $22,000 that Collins paid to credit card and insurance companies on Kincaid's behalf after Kincaid's arrest, was reasonably equivalent to the value of any interest that Kincaid might still have had in the home.

The district court granted the government's motion for turnover, resolving all factual disputes in the government's favor but without conducting an evidentiary hearing. The court accepted the government's assertion that Kincaid had a 50% interest in the home at the time of the 2006 quitclaim deed. The court also found that the government's $125,000 valuation of the home was correct and that the $40,000 paid to Kincaid's defense attorneys was not reasonably equivalent to the value of Kincaid's interest in the property. The court reasoned that any agreement between Collins and Kincaid to pay other expenses after Kincaid's arrest was "speculative at best," and thus not part of the reasonable value exchanged for Kincaid's interest in the property. And, the court found, Kincaid executed the 2006 quitclaim deed at a time when he expected to incur debts he could not pay, even though the government had not argued the point or developed any evidence on the subject.[2] The district judge concluded that the transfer

---

[2] The district court apparently relied on an inference that, once charged with the crime, Kincaid should have known he was likely to incur restitution debt. The government did not develop any evidence on this point, such as by asking Kincaid about his familiarity with the Mandatory Victims Restitution Act at the time he executed the second quitclaim deed, which was only a week after his arrest and before he retained a lawyer.

was thus fraudulent under the Federal Debt Collection Procedure Act and ordered Collins to turn over $23,019. As far as we know, this money has not yet been paid.

On appeal Collins argues that the district court erred by resolving disputed facts without conducting an evidentiary hearing. We agree. Kincaid's interest in the house, its proper valuation, and whether Kincaid at the time of the 2006 quitclaim deed reasonably should have believed he would incur debts beyond his ability to pay are material disputes fundamentally affecting the validity of the court's order. The government chose to serve citations under Illinois law, and the Illinois procedures governing these supplementary proceedings require a court to resolve factual disputes through an evidentiary hearing. See Ill. S. Ct. R. 277(e) (providing that "[a]ny interested party may subpoena witnesses and adduce evidence as upon the trial of any civil action"). We were explicit about this in *Sheth*, 759 F.3d at 715, which was decided more than a year before the district court ruled but was not mentioned by the government. See also *Workforce Solutions v. Urban Services of America, Inc.*, 977 N.E.2d 267, 275 (Ill. App. 2012) (explaining that Rule 277(e) requires court "to conduct a trial or evidentiary hearing to determine ownership of a third party's assets where both the judgment creditor and the third-party citation respondent claim entitlement to those assets").

We note that on appeal the government correctly concedes that the district court erred by including the $519 that was in the men's joint checking account when Kincaid was indicted. Under Illinois law, the government had no interest in those funds until the citation to discover assets was served on Collins, see 735 ILCS 5/2-1402(m), and by that time the funds had been exhausted.

Accordingly, we VACATE the turnover order and REMAND to the district court for further proceedings consistent with this order.