**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 29, 2020[*]
Decided April 29, 2020

**Before**

ILANA DIAMOND ROVNER, *Circuit Judge*

AMY C. BARRETT, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 19-2654

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Central District of Illinois. |
| *v.* | No. 06-CR-30073 |
| PAUL KINCAID, *Defendant*, | Richard Mills, *Judge.* |

APPEAL OF: STEVEN R. COLLINS,
  *Third-Party Respondent*.

**O R D E R**

The district court found that a criminal defendant fraudulently quitclaimed his interest in a property to Steven Collins and therefore entered a turnover order under the Federal Debt Collection Procedures Act. Collins appeals. We see no clear error in the district court's findings supporting the turnover order, so we affirm.

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

Federal officers arrested Collins's longtime business and life partner, Paul Kincaid, in 2006 on child-pornography charges. Kincaid ultimately was convicted, sentenced to 30 years' imprisonment, and ordered to pay $60,000 in restitution.

Following the entry of judgment, prosecutors served Collins with a citation to discover assets to satisfy the restitution order. As part of their investigation, they deposed Collins and searched the home he shared with Kincaid. Collins testified that he and Kincaid had agreed in 1979 (when they purchased the property) that Collins owned 80% and Kincaid owned 20%. In 1995, he continued, both men signed—but never recorded—a quitclaim deed that transferred Kincaid's entire interest to Collins. Days after Kincaid was arrested in 2006, Collins and Kincaid executed—and this time, recorded—a second quitclaim deed transferring Kincaid's interest to Collins. Contemporaneously, Collins issued to Kincaid's defense attorneys a $40,000 mortgage against the home. About a month later, Collins took out another mortgage; at that time, an appraiser valued the home at $125,000. Collins also paid several of Kincaid's expenses after his arrest (car, insurance, and credit card payments, and deposits to Kincaid's prison trust account totaling $22,476), which he asserts was further payment to Kincaid for the 2006 property transfer under an oral agreement.

The government then moved for a turnover order against Collins under the Federal Debt Collection Procedures Act, arguing that Kincaid fraudulently transferred his interest in the home because Collins paid him less than fair market value. The district court agreed and issued a turnover order for half the 2006 property value minus the $40,000 Collins paid to the defense attorneys ($22,500). In doing so, the court found that: (1) Kincaid and Collins owned the home as joint tenants with equal interests; (2) any oral agreement between Kincaid and Collins dividing ownership unequally was unenforceable against creditors because the title stated that they were joint tenants; (3) the 2006 appraisal accurately reflected the home's value at the time; and (4) Collins's promise to pay Kincaid's expenses was too "speculative" at the time of the transfer to be treated as payment for Kincaid's interest in the home.

Collins appealed, and we reversed with instructions to conduct an evidentiary hearing. *See United States v. Kincaid*, 681 F. App'x 498, 501 (7th Cir. 2017). The government had not produced the original deed to the home, so Collins's testimony that he and Kincaid held unequal interests in the property was uncontested. Collins also disputed the home's valuation and Kincaid's state of mind at the time of the transfer— material issues that, under Illinois law (applicable because the government served the

citation to discover assets under 735 ILCS § 5/2-1402(a)), the district court should have held a hearing to resolve. *Id.* at 500–01.

On remand, both parties submitted position statements (each with lengthy evidentiary exhibits) before the hearing, which the district court struggled to schedule because of Collins's repeated motions to continue. After granting several of his requests—to allow him to seek counsel, write briefs, and ask for time off work—the court scheduled the hearing for a date in September 2018 on which both parties had said they were available. Days before the hearing, however, Collins again moved to continue, saying that he was recovering from a recent injury; this time, the court denied the request, noting that it already had granted several continuances over the course of thirteen months and "[a]t some point, the case needs to move forward." It nevertheless allowed Collins to participate by phone. But Collins did not call in or answer the phone when the courtroom deputy called him.

Collins then moved to reschedule the hearing, but the district court denied the motion. In its order, the district court recounted Collins's long history of extensions and expanded its explanation for not granting the previous continuance; it concluded that if Collins could prepare such a detailed motion to continue—complete with a declaration and mailed less than 24 hours after the scheduled hearing—he also could have participated in the hearing by phone. Based on the history of delay, moreover, the court stated that it "does not believe that [Collins] intends to present evidence at a hearing." It therefore closed the record and ordered the parties to submit summaries of their evidence for its ruling.

Based on those submissions, the court issued a turnover order again. This time, the record included the property's full title history, which showed that Collins and Kincaid purchased the home as joint tenants, and they consistently held themselves out as co-owners on mortgage and easement documents until they executed the 2006 quitclaim deed. Moreover, the county recorder attested that the 1995 quitclaim deed was invalidly executed, so it would not have been recorded even if Collins had tried to add it to the title.

With respect to the home's valuation, the court credited the $125,000 appraisal of the home in 2006 over the competing figure of $86,400 produced in a "retrospective" evaluation that Collins commissioned in 2017. Though that appraisal included a more thorough home inspection than the one completed in 2006, Collins's appraiser conceded that he made "an extraordinary assumption that the condition of the property reflects the retrospective date of [the] appraisal." Finally, as to Kincaid's state of mind, the court

concluded that he intended to defraud the government when he signed the 2006 quitclaim deed; it cited the timing of the transfer (days after Kincaid learned he could be subject to criminal fines), his "special relationship" with Collins, and the disparity between the value of Kincaid's 50% interest ($62,500) and the $40,000 Collins paid for it (by way of retaining Kincaid's lawyers). The court did not specifically reconsider Collins's arguments that he paid more under an oral agreement with Kincaid, but it determined that "Kincaid transferred his 50% ownership interest … for $40,000."

On appeal, Collins first challenges the district court's denial of his motion to continue the last scheduled evidentiary hearing, but we see no error. District courts have considerable discretion in managing their dockets and enforcing deadlines to ensure that the parties are diligent in advancing their causes of action. *See* FED. R. CIV. P. 6(b)(1); *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 538–39 (7th Cir. 2011). And though, in our earlier decision, we noted that Illinois law requires a hearing, those procedural rules do not confine the district court to a "procedural straitjacket"—it may proceed in any manner as long as the proceedings ensure due process. *Resolution Tr. Corp. v. Ruggiero*, 994 F.2d 1221, 1226–27 (7th Cir. 1993).

Here, for more than a year, the court made every effort to comply with our mandate to hold a hearing: it continued the date at least eight times at Collins's request to allow him to prepare, scheduled the hearing for a date that Collins said he was available, and allowed him to appear by phone. In the face of yet another motion, the court appropriately cited the need to move the case forward. And given Collins's detailed continuance request filed less than 24 hours after the scheduled hearing—all while claiming to be too unwell to present evidence—the court's skeptical view of Collins's excuse for his absence was justified. The district court also allowed Collins to appear telephonically and took pains to develop the evidentiary record despite Collins's inability or unwillingness to attend a hearing. We cannot conclude that the court's denial of Collins's last-minute motion to reschedule (or its successors) was unreasonable. *See Spears v. City of Indianapolis*, 74 F.3d 153, 157–58 (7th Cir. 1996) (no abuse of discretion in denying third continuance request where second request dubbed "final" and earlier extensions increased time beyond period allowed under local rules).

Collins's arguments that the district court impeded his ability to develop the record do not persuade us either. He challenges the district court's denial of two motions after we remanded: one to reopen discovery and one to supplement his evidentiary summary with another affidavit from his appraiser. But we would reverse only if Collins showed that the district court's decisions caused him substantial

prejudice, *see Scott v. Chuhak & Tecson, P.C.*, 725 F.3d 772, 784 (7th Cir. 2013), and he has not done so. With respect to his first motion, Collins states only that the district court should have allowed him to investigate whether the government had seized the original 1995 quitclaim deed from his home and thereby had actual notice that Kincaid tried to sign over his property interest long before he was arrested. But when the government learned of the 1995 deed is irrelevant. Whether or not Kincaid intended to transfer his interest in 1995, he did not actually do it until 2006, and it is his state of mind at *that* transfer that speaks to fraud. As to Collins's second motion, we see no prejudice in the court's refusal to accept a supplemental affidavit from his appraiser after the close of evidence. The affidavit further explained the appraiser's methodology, but it did not undercut the competing appraisal, and Collins had ample opportunity to obtain it before the close of evidence. *See Packman v. Chicago Tribune Co.*, 267 F.3d 628, 647 (7th Cir. 2001).

Next, Collins challenges the district court's factual findings on the three issues we remanded for resolution: the ownership of the home, its value, and Kincaid's state of mind at the time of the 2006 transfer. We review these factual findings for clear error. *See In re Wierzbicki*, 830 F.3d 683, 686 (7th Cir. 2016) (reviewing whether debtor received "reasonably equivalent value" for property transfer).

Here, the court reasonably credited the evidence the government offered to support its position on the value of the home in 2006 and Kincaid's ownership percentage. The mortgage appraisal of the home took place shortly after the transfer, whereas Collins's appraiser tried to extrapolate the 2006 value based on his inspection in 2017. Moreover, title documents showed that Collins and Kincaid purchased the home "not as tenants in common, but as joint tenants," and they represented themselves as joint tenants well after the 1995 quitclaim deed. Under Illinois law, joint tenants are treated as owning equal property shares upon severance. *See Baillie v. Raoul*, 137 N.E.3d 240, 244–45 (Ill. App. Ct. 2019); *see also* 765 ILCS 1005/1c (prohibiting unmarried people from owning as tenants-by-the-entirety). Collins touts his own evidence on both points, but the district court's choice between competing evidence is not clear error. *See Cooper v. Harris*, 137 S. Ct. 1455, 1478 (2017).

The finding of Kincaid's fraudulent intent is also supported. The Federal Debt Collection Procedures Act allows the government to satisfy a money judgment by clawing back a defendant's fraudulent transfer—defined as one made "without receiving a reasonably equivalent value … if the debtor … believed or reasonably should have believed that he would incur[] debts beyond his ability to pay as they

became due." 28 U.S.C. § 3304(b)(1)(B)(ii). And at his initial appearance on his 2006 criminal charges, Kincaid learned the fines he could face if convicted; the government also revealed that it was considering seeking the forfeiture of his home because Kincaid produced illegal pornography there. The transfer of the home just days after Kincaid learned he could be subject to these penalties, along with the facts that he accepted a below-market price (as found by the district court) and that the buyer was someone with whom he had a close personal relationship, support a reasonable inference that the transfer was fraudulent. 28 U.S.C. § 3304(b)(2); *United States v. Holt*, 664 F.3d 1147, 1151 (8th Cir. 2011) (finding intent to defraud where defendant transferred cash to boyfriend on eve of sentencing, knowing he would invest cash in home titled to him alone).

In response, Collins points to the court's advice at Kincaid's initial appearance that Kincaid could borrow against his home to pay an attorney, arguing that it shows Kincaid did not transfer his interest with an intent to defraud. But quarrelling with the district court's reasonable inference from the evidence is not enough to show clear error. *See United States v. Salem*, 657 F.3d 560, 563 (7th Cir. 2011).

Collins also argues that the district court erroneously concluded that he paid only $40,000 for Kincaid's half of the home. He points to his promise to pay various expenses for Kincaid and fund his prison commissary account. But under the Act, the "value" received for an asset "does not include … an unperformed promise" to the alleged fraudster. 28 U.S.C. § 3303(a). In other words, "value" is received at the time of the transfer. *See id.*; *In re Hinsley*, 201 F.3d 638, 644 (5th Cir. 2000).[1] Here, that included only the $40,000 that Collins paid contemporaneously with the execution of the quitclaim deed. Therefore, even if Collins's payments toward Kincaid's expenses were intended to compensate Kincaid further for his share in the property (the district court did not make any finding on the existence of the oral agreement), the court was correct to exclude the promised transfers from its calculation of the "value" Kincaid received.

---

[1] This exclusion does not apply if, in the ordinary course, an alleged fraudster regularly makes payments to his spouse or cohabitant in exchange for a promise to use the funds to cover shared household expenses. 28 U.S.C. § 3303(a); *see United States v. Goforth*, 465 F.3d 730, 736 (6th Cir. 2006). But that does not describe this case because Collins states that, at the time of the transfer, he held a lump sum with a promise to cover Kincaid's expenses in the future.

Finally, Collins argues that the district judge should have granted Collins's motion requesting that he recuse himself. As evidence, Collins cites rulings against his interest and comments the judge made expressing frustration with delay in moving the case forward. But adverse rulings alone are not grounds for recusal, and, given the court's decision to grant Collins's numerous continuances despite justifiable concern with the mounting delay, the comments do not show bias. *See* 28 U.S.C. § 455(a); *Liteky v. United States*, 510 U.S. 540, 556 (1994).

We have considered Collins's remaining arguments, and none has merit.

AFFIRMED